*1139 OPINION
By the Court,
Rose, J.:
Jayme and Steve Hopper divorced in August, 1995. The decree of divorce vested primary physical custody of Steve and Jayme’s six-year-old daughter, Anna Hopper, with Jayme. In February, 1996, following a change of custody hearing, the trial court concluded that Steve had shown that a material change in circumstances justified switching custody from Jayme to him, and that it would be in Anna’s best interest to live with Steve. We conclude that the trial court erred in changing custody from Jayme to Steve because no evidence of changed circumstances existed.

FACTS

Jayme and Steve were married in California on July 20, 1989, and their daughter, Anna, was born August 17, 1989. Jayme, Steve, and Anna had lived in Nevada since 1992. Jayme and Steve separated on October 18, 1994, and around that time Jayme and Anna moved to California; Jayme and Steve dispute whether or not Jayme had Steve’s consent to take Anna out of Nevada. On November 22, 1994, Steve filed for divorce and on November 28, 1994, he petitioned the court for (among other things) temporary physical custody, temporary child support, and an order directing Jayme to return Anna to Nevada. In support of his motion, Steve alleged that Jayme had been physically and verbally abusive to Anna since 1991.
After a series of continuances due to an apparent inability to serve Jayme with process, the parties came before the district court on January 17, 1995. At this time Steve and Jayme were referred to the Family Mediation and Assessment Center (FMAC) for a marathon conflict resolution to negotiate a parenting plan. This attempt at mediation was unsuccessful so the matter was set for a January 24, 1995 evidentiary hearing, wherein it would be determined whether Jayme should return Anna to Nevada. At the hearing, Steve testified that Jayme had been Anna’s primary caretaker throughout the marriage. Upon the conclusion of the hearing, the court ordered Jayme to return Anna to Nevada, but provided that if Jayme accompanied Anna, Jayme would be awarded temporary primary physical custody. In ordering Jayme to return to Nevada, the court noted that Jayme *1140 “is unemployed, has no transportation, and has not demonstrated a desire or intent to maintain a relationship between [Steve] and [Anna].”
Subsequently, Steve and Jayme entered into a “Parenting Plan” in which Steve agreed to Jayme having primary custody of Anna, subject to his specified visitation rights. However, when the parties presented the plan to the court on May 3, 1995, Steve had a change of heart and repudiated the plan, claiming that he did not fully understand the plan in its entirety. In response, the court ordered another full assessment with FMAC, but ordered that the rejected parenting plan govern the terms of visitation in the interim.
On August 2, 1995, Steve and Jayme informed the court that they had resolved all outstanding issues and that they were ready to “prove it up and get . . . divorced.” At this time, the parties filed a second parenting plan which also provided that Jayme would have primary physical custody of Anna and stipulated that Jayme could return to California with Anna.[1] Subsequently, the court entered a formal “Decree of Divorce,” filed August 11, 1995. Prior to entry of the divorce decree, Jayme’s father, Allen Katzman, and step-mother, Elizabeth Katzman, filed a motion to establish visitation with Anna. Jayme opposed the motion on procedural and substantive grounds. The court heard the grandparents’ motion for visitation on August 9, 1995, and referred the matter to Family Specialist, Marjorie DiOrio.
By a report dated August 24, 1995, DiOrio stated that “there was nothing found that would prohibit Allen and Elizabeth Katzman from spending time with their granddaughter, Anna” and further stated, without elaboration, that she was “very concerned that Jayme did not mediate in good faith and that it would be in Anna’s best interest for an assessment to be conducted.” At a September 6, 1995 hearing to review DiOrio’s FMAC report, Elizabeth and Allen’s attorney, purportedly acting on Steve’s behalf, advised the court that Steve wanted a second full FMAC assessment, as recommended by DiOrio. Accordingly, the court ordered the second assessment and set the matter for a January 8, 1996 hearing to review the results.
After hearing argument regarding the completed second FMAC assessment report, the court stated:
I share the concerns of that [sic] are raised in the FMAC report. I don’t like one, the change in the disposition or demeanor of the child and coupled with — if not the aliena *1141 tion, I guess the frustration of the relationship between the child and the father. Because the possibility would involve a change of custody, I’m not going to do that absent a hearing.
An evidentiary hearing on the issue of changing primary physical custody of Anna from Jayme to Steve was held on February 1,8, and 9, 1996. Jayme, her sister, Tina Katzman, their natural mother, and Jayme’s cousin testified on Jayme’s behalf, while Steve, DiOrio, and Allen testified in support of changing custody to Steve.
At the custody hearing, DiOrio testified extensively on Jayme’s tendency to yell and scream at Anna. Steve testified that Jayme’s yelling had always been a problem, and stated that the only reason he had accepted the second parenting plan and divorce decree vesting Jayme with primary physical custody was because Jayme had orally promised to get help for her yelling. He also claimed that Jayme had promised that she would not live in Hollywood with Anna, and that she would allow him to visit Anna more often than was set forth in the divorce decree.
On February 15, 1996, the court issued a “Minute Order” stating, in pertinent part, that:
While the Court may not have ruled initially in [Jayme’s] favor had the issue of custody been contested, an order addressing the custody was nevertheless entered. The court must necessarily consider Murphy v. Murphy, 84 Nev. 710, 447 P.2d 664 (1968), and determine whether [Steve] has met the requisite burden thereby entitling him to the relief requested.
The evidence clearly showed that [Jayme] had a problem with her temper and corresponding behavior towards Anna .... Such behavior clearly has an effect on a child and continued exposure to such an environment is not in a child’s best interest. The Court finds [Steve] was in fact concerned with this and, although not written, was told by [Jayme] that counseling would be obtained so as to alleviate this concern. In addition, [Steve] was told his contact and involvement with the minor child would be greater than that which was set forth in the Parenting Plan. Notwithstanding the above representations, they were not complied with.
This Court further finds that [Jayme’s] actions demonstrate a continuing problem with her disciplining and interaction with the minor child. . . . The Court finds that [Jayme] does not encourage any type of relationship between [Jayme’s] father and the child as well. Additionally, the fact that [Jayme’s] vehicle was, and continues to be, inoperable, *1142 is suspect at best. This clearly renders any exercise of visitation more difficult.
. . . The distance now between the parties, coupled with the frustration of maintaining a relationship between [Steve] and his child are additional changes recognized by this Court. Lastly, the Court cannot ignore the environment and circumstances the child has been subjected to and continues to endure while in [Jayme’s] custody.
Based upon the above, the Court finds there to be a material change of circumstances and that a change of custody is in fact in the best interest of the minor child.
A written order incorporating the minute order was issued on February 23, 1996. Jayme appeals from this order changing primary physical custody of Anna from her to Steve.

DISCUSSION

“A change in custody is warranted only when: ‘(1) the circumstances of the parents have been materially altered; and (2) the child’s welfare would be substantially enhanced by the change.’ ”[2] Wiese v. Granata, 110 Nev. 1410, 1413, 887 P.2d 744, 746 (1994) (quoting Murphy v. Murphy, 84 Nev. 710, 711, 447 P.2d 664, 665 (1968)). It is presumed that the trial court has properly exercised its discretion in determining a child’s best interest, and a trial court’s determination of custody will not be disturbed unless there has been a clear abuse of discretion, so long as this court is satisfied that such determinations were made for appropriate reasons. Sims v. Sims, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993); Primm v. Lopes, 109 Nev. 502, 504, 853 P.2d 103, 104 (1993); Atkins v. Atkins, 50 Nev. 333, 338-39, 259 P. 288, 289 (1927). We conclude that the trial court abused, its discretion in determining that the circumstances of the parents had been materially altered since entry of the final custody order (the divorce decree) in August, 1995.

*1143
The circumstances of the parents had not been materially altered so as to justify a change of custody

To establish this criterion, “ ‘[t]he moving party in a custody proceeding must show that circumstances . . . have substantially changed since the most recent custodial order. . . . Events that took place before the proceeding [are] inadmissible to establish a change of circumstances.’ ” McMonigle v. McMonigle, 110 Nev. 1407, 1408, 887 P.2d 742, 743 (1994) (quoting Stevens v. Stevens, 810 P.2d 1334, 1336 (Or. Ct. App. 1991)).
Primary physical custody was awarded to Jayme pursuant to the August 11, 1995 divorce decree. Jayme argues that the district court’s stated grounds for finding a material change in circumstance — Jayme’s excessive yelling at Anna, Jayme’s failure to facilitate a relationship between Anna and Steve, and Jayme’s lack of transportation — all existed at the time of the most recent custodial order, the August 11, 1995 divorce decree. We agree.
Steve referred to Jayme’s verbal abuse of Anna in his November, 1994 motion seeking the return of his daughter from California. At the trial below, Steve testified that Jayme’s yelling and excessive discipline had been a major problem during their marriage and that he believed that Jayme needed psychiatric help for her yelling when he met her seven years ago. Clearly, Steve was aware of Jayme’s alleged inability to control her anger around Anna, nonetheless, he agreed, pursuant to the second parenting plan and divorce decree, that Jayme should have primary physical custody of Anna. Likewise, the trial court’s February 3, 1995 order that Anna be returned to Nevada professed that Jayme had no transportation and was not facilitating a relationship between Anna and Steve. Nonetheless, the trial court improperly relied on these circumstances as grounds for finding a material change justifying a change of custody from Jayme to Steve one year later. [Headnote 5]
Furthermore, we conclude that Steve’s claim, and the trial court’s finding, that the divorce decree’s award of primary custody to Jayme was in some way conditioned upon an alleged agreement between the parties that Jayme would get help for her yelling, would not live in Hollywood, and would give Steve greater visitation than that provided for in the divorce decree, is not supported by any evidence.
Steve signed two parenting plans (although the first one was repudiated, the second accepted version was nearly identical to the first) and accepted the divorce decree, none of which made any mention of the alleged supplemental oral agreement of the *1144 parties. While avoiding a protracted analysis of the application of the parol evidence rule (not raised by the parties), we conclude that the alleged oral agreement involved issues of such a magnitude that they should have been reduced to writing in one of the three documents which all granted Jayme primary physical custody of Anna; the last two (the second parenting plan and the divorce decree) expressly provided that Jayme could move with Anna to California.
Notwithstanding the high level of deference to be afforded to the trial judge’s conclusions following review of the testimony and evidence, we conclude that it was error for the judge to accept the alleged oral agreement between Jayme and Steve as placing conditions on Jayme beyond those stated in the parenting plan and decree of divorce. Cf Khaldy v. Khaldy, 111 Nev. 374, 377, 892 P.2d 584, 586 (1995) (“Although it might be desirable for a child support obligor to raise voluntarily his/her child support payments beyond that ordered by the district court, it is unrealistic to expect such behavior and unfair to penalize the obligor for failing to live up to this ideal.”).
Accordingly, we conclude that there was no material change in the parents’ circumstances that would warrant changing Anna’s custody from Jayme to Steve. Because Steve failed to satisfy this necessary first prong of the Murphy standard governing changes of custody, we need not reach the other issues raised on appeal.

CONCLUSION

We conclude that, as a matter of law, the change of custody was inappropriate because there were no material changes in Jayme and Steve’s circumstances in the time between the initial award of primary custody to Jayme and the change of custody to Steve, some six months later. Therefore, we conclude that the trial court abused its discretion in changing custody of Anna from Jayme to Steve. Accordingly, we reverse the lower court’s order, and remand this case to the district court with instructions to reinstate Jayme as primary physical custodian of Anna.[3]
Shearing, C. J., and Young, J, concur.

 Jayme and Anna returned to an apartment in Hollywood, California, where they had lived before Jayme had been ordered to return Anna to Nevada, prior to entry of the divorce decree.

 We distinguish Truax v. Truax, 110 Nev. 437, 438-39, 874 P.2d 10, 11 (1994), wherein this court explained that the Murphy change of circumstances criterion would not apply to the modification of joint physical custody orders. Where custody is shared, the best interest of the child is the single dispositive factor governing modification. Id.; codified at NRS 125.510(2).
Steve and Jayme’s divorce decree provides that they shall share “joint legal care” of Anna, but that Jayme shall have “primary physical custody. ” Therefore, we interpret the decree as requiring a showing of both of the Murphy criteria to justify a change of custody.

 The Honorable A. William Maupin, Justice, did not participate in the decision of this matter.