Springer, C. J.,
dissenting:
This is a divorce case in which the mother and father are engaging in a custody battle over the custody of their only child, Colin. Each parent sought primary custody in a contested custody proceeding. After considering the best interest of the child and the expressed desire of the mother to take the child with her to West Virginia, the district court awarded joint legal and physical custody to the parents. This court now reverses the judgment of the district court and remands “for re-evaluation of the custody decision and the motion to relocate.” The stated ground for reversal is that the mother’s '“desire to [re]locate should have been considered in the initial permanent custody determination,” but was not. I dissent because the district court did consider the mother’s desire to relocate and did not abuse its discretion in awarding joint custody, based on the best interest of the child. As the majority points out, the “district court held an evidentiary hearing to address the divorce, a permanent custody arrangement and Teresa’s motion to relocate.” I see no reason why the district court should be required to reconsider these matters.
As stated in the majority opinion, both parents were seeking primary custody. Based on a February 1997 hearing, the district court denied the primary custody and awarded temporary joint and equal custody to the two parents. In the following month, March 1997, the mother moved for an order that would permit *1440 her to take the child away with her to West Virginia. Asking the court if she could take the child to West Virginia is, of course, the same as asking the court, again, to award her full custody.
As mentioned, at the divorce trial, the district court addressed the issues of “permanent custody arrangement” and the mother’s “motion to relocate.” I do not see how this court can fail to see that the mother’s motion to take the child to Virginia is the same as her previously denied plea for primary custody. The district court saw it. The district court observed that ‘ ‘ [i]f the move were allowed,” the “joint custodial arrangement” that had been previously adjudicated and which was ultimately decided upon by the district court would be “virtually impossible.” Another way of putting the district judge’s approach to the custody and relocation decisions before the court is this: “I decided some months ago to award joint custody. The arrangement is working out well. On the basis of NRS 125.480, which requires that the ‘sole consideration’ of the court be the best interest of the child, I am going to award permanent joint custody. The mother’s motion to relocate is the same as a motion for primary custody; therefore, I must deny her motion.” Once, after having conducted two custody hearings, the district court made its final joint custody decision, it was correct in ruling that it would be “inconsistent” with the joint custody award to permit one joint custodian “to defeat the [joint custody] order by requesting to move under NRS 125A.350.” That is exactly the point: When one joint custodian makes a distant move away from the home of the other joint custodian, this necessarily defeats the joint custody. This being the case, a move of this kind triggers a custody decision under the best interest test rather than a permission to relocate test under NRS 125A.350.[1]
*1441 I am concerned about the effect of the majority opinion on NRS 125.480, which requires that the best interest of the child be the sole consideration in child custody disputes. The majority opinion declares that “[djespite the language of the statute,” the best interest of the child “can never be determined in a vacuum without considering the other members of the family.” I am not sure what this means. It might mean that from now on district courts must consider, in addition to the best interest of the child, the best interest of “other family members.” If the language is intended to mean that, “despite” the statute, the court need not use the child’s interest as the “sole” consideration, then the majority opinion is in direct conflict with the stated, statutory intention of the legislature. It is not clear to me how the district court will go about applying the best interest of the family standard. In any event, as I maintain in this dissenting opinion, a distant move by a joint custodian is such a change of circumstances that the issue of custody and the child’s best interest must prevail.
The child’s interest must prevail in custody determinations; and it certainly would have been within the scope of the district court’s discretion to have concluded that it was in the best interest of this child to grant the motion for relocation and thus change custody from joint custody to primary custody in the mother. The court might also have decided to grant primary custody to the father. What the court did do is to decide that continued joint custody was in the best interest of the child and that the mother could either remain at home or become, effectively, a visiting parent living in West Virginia. It is not necessary or proper to interfere with the district court’s custody decree. Of course, if the mother does move away, the district court might, in the future, decide to reexamine the custody arrangement based on change of circumstances. For the present, however, I believe that the custody issue and the relocation issue were correctly decided by the district court.
This is the first time that we have considered a relocation motion by a joint custodian. In cases of joint custody (and in cases in which the noncustodial parent is sharing a large part of the residential responsibility for raising the children), there is inherent in any substantial relocation by one of the joint custodians a radical change in circumstances that not only warrants, but requires, a re-examination of the entire custodial situation. Under such circumstances, the district court cannot naively decide the custody controversy simply as a relocation case, but must, of necessity, first reconsider the entire case purely as a custody matter, decided *1442 on the basis of what is found to be in the best interest of the child. Under Murphy v. Murphy, 84 Nev. 710, 711, 447 P.2d 664, 665 (1968), where “the circumstances of the parents have been materially altered,” custody may be changed, but only when “the child’s welfare would be substantially enhanced by the change.” It appears to be rather clear, at this juncture, that the child’s welfare would not in any way be enhanced by a dissolution of the joint custody and the virtual removal of one of this child’s parents from his life.
The district court was able to see the point: When a joint custodian tells the court that he wants to go to Katmandu and take the children with him, that is the same as saying that he wants a change in custody. The district court properly saw this as a custody case and not merely a case involving one of the parent’s desire to move' away. The district court correctly surveyed the entire custodial landscape with reference to the best interest of the child. After doing this, the court decided that the best interest of the child would be served by maintaining the parents’ joint custody of the child. In a case like this one, where the child is spending substantially equal time with each parent, the question is not whether one parent is entitled to move from the state, the question is what is the optimal custody arrangement, that is to say, the custody that is in the best interest of the child. There is no dearth of authority for the proposition that a joint custodian’s making a distant move from the joint custody jurisdiction is, of itself, a change of circumstances, a change that mandates consideration of the entire custody arrangement, to be decided on the basis of the best interest of the child. The easy-to-satisfy Schwartz factors (Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991)) cannot be blindly and exclusively applied in cases in which an ongoing joint custody relationship is subject to being “defeated” by a proposed relocation. The district court must (as was done in the present case) reevaluate all custodial factors in these kinds of cases and cannot proceed blithely to dispose of what is essentially a custody matter merely by telling one parent that it is all right to move and take the children away with him and away from the other parent.
I cannot, of course, disagree with the majority’s assertion that the relocation statute, NRS 125A.350, applies, by its terms, to joint custody cases. I must note, however, that by including joint custody in the relocation statute, the legislature could not have intended that in the type of joint custody cases in which a substantial relocation disrupts and alters the basic custodial arrangement, the court should be enabled to terminate effectively a preexisting joint custody, merely by permitting one parent to remove the child from the custody of the other joint custodian. I am sure *1443 that the legislature did not intend that the district court should be blind to the best interest standard or that it need not make basic custodial decisions on these kinds of cases before it gets to the relocation considerations dictated by Schwartz. The district court acted reasonably and properly in this case when it decided that continued joint custody was in the best interest of this child and then, based on this ruling, necessarily ruled that the mother could not disrupt the joint custody arrangement by taking the child away from his father and becoming the primary custodian.
In the Schwartz line of cases, we dealt with requests to relocate by parents with primary, not joint, physical custody of the children. Except for two cases in which a parent had obtained primary physical custody by agreement (Cook v. Cook, 111 Nev. 822, 898 P.2d 702 (1995); Trent v. Trent, 111 Nev. 309, 890 P.2d 1309 (1995)), it appeared that the parents in Schwartz-like cases had been awarded primary physical custody of their children by the district court. See Gandee v. Gandee, 111 Nev. 754, 895 P.2d 1285 (1995); Jones v. Jones, 110 Nev. 1253, 885 P.2d 563 (1994); Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268 (1991). Implicit in these custody awards was a finding by the district court that awarding these parents primary physical custody was in the best interest of the children. See NRS 125.480(1) (“In determining custody of a minor child ... the sole consideration of the court is the best interest of the child.”). We must, then, begin our analysis of the Schwartz line of cases with the premise that it was adjudged to be in the best interest of the child to remain with the parent seeking relocation. See Schwartz, 107 Nev. at 382, 812 P.2d at 1271 (“In removing a child from the jurisdiction where the child currently lives, the best interests of the child should ... be the paramount judicial concern”). Only after giving “paramount judicial concern” to the best interest of the child can we properly proceed to consider the other factors articulated in the Schwartz line of cases in order to balance “ ‘the custodial parent’s interest in freedom of movement as qualified by his or her custodial obligation, the State’s interest in protecting the best interests of the child, and the competing interests of the noncustodial parent.’ ” Id. at 382, 812 P.2d at 1270 (quoting Holder v. Polanski, 544 A.2d 852, 855 (N.J. 1988)). In the case at bar, the district court determined, twice, that it was in the best interest of the child to remain in a joint physical custody arrangement. Once that determination was made, it, of course, follows that any other custody arrangement would not be in the child’s best interest. Once the district court came to the conclusion that the best interest of the child was served by the continuation of joint custody, it was no longer necessary or appropriate to consider the Schwartz factors because relocation would require a change detrimental to *1444 the best interest of the child, i.e., a modification of the joint custody arrangement. This mother’s moving to West Virginia may be in her best interest, but it did not appear to the district court that it was in the best interest of the child; and the district court so adjudged.
The Schwartz line of cases is not controlling in the present case for another reason. Although on its face NRS 125A.350 addresses joint physical custody arrangements, our treatment of the statute and our analysis in the Schwartz line of cases do not say or imply that a motion to relocate may be granted in joint custody cases without revisiting the whole custody arrangement. See Schwartz, 107 Nev. at 381-82, 812 P.2d at 1270 (The overall purpose of the statute is “to preserve the rights and familial relationship of the noncustodial parent with respect to his or her child.”). There is no “noncustodial parent” here.
Our analysis in the relocation cases has thus far been predicated on the relocating parent already having primary physical custody. For this reason, the Schwartz line of cases requires us to consider, for example, ‘ ‘whether the custodial parent’s motives are . . . not designed to frustrate or defeat visitation rights accorded to the noncustodial parent” and “whether . . . there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent.” Schwartz, 107 Nev. at 383, 812 P.2d at 1271. Such an analysis is appropriate only in cases in which a court is endeavoring to insure that the parent remaining in Nevada is not deprived of what he or she had before, namely, visitation rights. Neither parent, in the case before us, had visitation rights. Each parent had full and equal custodial rights; so it is idle to speak of either parent’s suffering in the quality and quantity of such visitation. By effectively modifying the joint custody arrangement by permitting the mother to relocate and take the child away with her, the father is being deprived of his right of custody. The Schwartz line of cases cannot be relied upon, and was not relied upon by the district court, in deciding this matter.[2]
As in Mosley v. Figliuzzi, 113 Nev. 51, 930 P.2d 1110 (1997), the McGuinnesses were sharing physical custody of the child *1445 equally under a joint legal and physical custody decree. The district court quite correctly concluded that the father was not a “ ‘noncustodial’ parent.” The father was not (as in the Schwartz-like. cases) a secondary custodian or “visiting” parent trying to protect his visitation rights by resisting a primary custodian’s request to move from the jurisdiction and take the child away. The father here is the custodian, the primary custodian (or should I say the “co-primary custodian”?). Once the father’s joint custody status was reaffirmed and readjudicated, removal proceedings, for the time, anyway, became moot.
Although NRS 125A.350 requires that “a parent having joint custody’ ’ must, like a primary custodian, petition for permission to leave the state with the child, where a district court reexamines the whole issue of custody and decides that joint custody still is in the best interest of the child, such a custody decree should be sustained. See Primm v. Lopes, 109 Nev. 502, 504, 853 P.2d 103, 104 (1993) (holding that in a custody matter, a trial court is presumed to have properly exercised its discretion in deciding what constitutes a child’s best interest). It would not make any sense for the court, after making the best interest, joint custody judgment, to consider whether the child should then be removed from the state and so demolish the joint custody status just decided to have been in the child’s best interest.
I note that in this case the district court held that as to the original “institution of the joint physical arrangement[,] there have been no difficulties,” that the “custody arrangement between Colin and his father would be impaired” by the prospective move, and, most importantly, that “[I]t is not in Colin’s best interest to allow” the mother to take the child away in a way that would “defeat” the joint custody arrangement.
In concluding, I would note that in addition to finding, twice, that maintaining the joint custody arrangement was in the child’s best interest, the district court also found that there was nothing in the mother’s “request to relocate which creates a compelling reason to move,” and that, although her request to relocate may have been made “in good faith,” her request was not so “compelling” that a “true joint physical custody arrangement should be destroyed.” We should pay attention to these findings.[3] We *1446 should leave the district court’s decision alone and, whenever feasible, permit the child to grow up with two parents instead of one. I would affirm the district court’s orders.[4]

 See, e.g., In Re Marriage of Burgess, 913 P.2d 473, 483 n.12 (Cal. 1996) (when parents have shared joint physical custody, relocation of one of them justifies modification of custody under a best interests test); Ayers v. Ayers, 508 N.W.2d 515, 519 (Minn. 1993) (in shared custody cases, relocation amounts to a modification of the custody award, and, thus, must be justified by the relocating parent); Jaramillo v. Jaramillo, 823 P.2d 299, 309 (N.M. 1991) (where parties share custody equally, neither has the burden of proof in removal matter). Thus, when a parent who shares equal physical custody with the other parent decides to move, it is no longer a question of “permission to move”; the question becomes the greater question of who should, under the circumstances, receive primary custody of the child. “[I]f neither parent has been exercising a significant majority of custodial responsibility for the child, the court should reallocate custodial responsibility based on the best interests of the child, taking into account all relevant factors including the effects of the relocation on the child.” The American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations, Part I § 2.20(4)(b) (Tentative Draft No. 3, 1998) (hereinafter “ALI Draft”) “When relocation in such cases makes it necessary to choose one parent to be the primary custodial parent, there is little choice but to reassess the cus *1441 todial arrangements under the best-interest-of-the-child test. In applying this test, the court should consider all relevant factors, including the potential disruptive effects of the relocation itself and its potential benefits.” ALI Draft, Part I § 2.20 cmt. e.

In the Schwartz line of cases, we were able to decide the issue of relocation without disturbing the existing custody arrangement. In the case at bar, granting the mother’s request to relocate requires modifying the custody arrangement, even though the district court found the joint custody arrangement to be in the child’s best interest. Thus, by requesting to relocate, the mother has managed to obtain a change of custody by doing an end run around our rule that “[wjhere custody is shared, the best interest of the child is the single dispositive factor governing modification.” Hopper v. Hopper, 113 Nev. 1138, 1142 n.2, 946 P.2d 171, 174 n.2 (1997). This opens up NRS 125A.350 to abuse, and I can see the majority’s result discouraging joint cus *1445 tody arrangements in the future because parents with no plans to leave Nevada will fear the same fate befalling them as has befallen the hapless father here.

We have previously noted our concern that NRS 125A.350 was being used “as a means to chain custodial parents, most often women, to the state of Nevada.” Trent, 111 Nev. at 315, 890 P.2d at 1313. By preserving the joint custody arrangement in the case at bar, we will not be attempting to chain the mother to this state. Rather we will be acknowledging that the child’s best interest comes first and that the calculus of relocation cases obliges us to consider the mother’s “ ‘interest in freedom of movement as qualified by . . . her custodial obligation.’” Schwartz, 107 Nev. at 382, 812 P.2d at 1270 (quoting Holder, 544 A.2d at 855).

I wish to include in the margin some comments on the majority’s treatment of Mosley. The majority believes that the district court “overstated the significance” of Mosley. I do not see how. There is nothing in the record that suggests to me that the district court incorrectly saw Mosley as standing “for the proposition that this court always prefers equal split, joint custody arrangements.” The district court cited Mosley largely because Mosley, like this case, was a joint physical custody case and the question was whether a joint physical custody decree should stand or fall, based upon the best interest of the child. Mosley does not hold that the court always prefers “equal split,” nor did the district court cite it for such a holding.