CAROL CASTLE, FKA CAROL SIMMONS, APPELLANT, *v.* JON SIMMONS, RESPONDENT.

No. 38989

April 1, 2004                                              86 P.3d 1042

*David D. Loreman,* Elko, for Appellant.

*Easterly Armstrong & Lambert* and *John E. Lambert,* Elko, for Respondent.

# OPINION

By the Court, MAUPIN, J.:

In this appeal, we primarily consider whether the district court, in granting a motion to change child custody, properly considered evidence of domestic violence that occurred before the parties' divorce decree was entered. We conclude that a party seeking to change custody may introduce evidence of domestic violence if he or she or the district court was unaware of the existence or extent of the conduct when the prior custody order was entered. Consequently, in this case, the district court did not err in considering the pre-decree domestic violence evidence.

## FACTUAL AND PROCEDURAL HISTORY

Jon and Carol were married on June 22, 1979, and divorced August 13, 1998. The marriage produced six children. The divorce decree incorporated a settlement agreement that awarded ''full legal and physical'' custody of the minor children to Carol, subject to specifically defined ''reasonable'' visitation and Jon's obligation to pay child support.

After the divorce, Jon learned from his two oldest children that Carol, before and after entry of the original decree and award of custody, engaged in acts of domestic violence against them and their younger siblings, the extent of which he was previously unaware. Thereafter, Jon sought to modify the custody arrangement, relying on the alleged instances of domestic abuse before and after the divorce. The district court granted Jon's ex parte application for temporary custody. The parties then stipulated to share custody of the three remaining minor children pending a final ruling on the motion to modify, and an evidentiary hearing was scheduled.

The hearing was held over four separate court sessions in November 2001. Independent counsel represented the children. More than twenty witnesses, including an expert retained by Carol,

presented conflicting testimony as to whether and the extent to which Carol had engaged in acts of domestic violence before and after entry of the divorce decree. Finally, a court-appointed child advocate testified that, based upon interviews with the children, custody should be transferred from Carol to Jon.

Although not mentioning the recommendations of the child advocate in its decision, the district court found that clear and convincing evidence supported the claims of Carol's abuse, including instances of mutual combat, physical beatings, kicking, hair pulling, and scratching, accompanied by screaming and yelling. In concluding that a change in custody was warranted, the district court followed NRS 125C.230(1), which creates a presumption that when a parent engages in domestic violence, that parent's sole or joint custody of the children is not in the children's best interest. In the court's view, Carol had not rebutted this presumption. The district court then determined that changed circumstances were demonstrated, *i.e.,* changes in demeanor and problems with visitation, and that Jon was not aware of the extent of the physical abuse until the summer of 2000, when two of the children apprised him of the extent of the abuse. Accordingly, the district court ordered that custody of the three minor children be changed from Carol to Jon.

Carol appeals, primarily contending that the district court abused its discretion in considering allegations of pre-decree misconduct, in finding that instances of abuse were shown by clear and convincing evidence, in failing to find that any showing of abuse was rebutted, in finding that Jon satisfactorily established a change in circumstances between the entry of the divorce decree in 1998 and the ex parte application to change custody in 2001, and in concluding that modification was in the children's best interest.

## DISCUSSION

### Standard of review

Unless there has been a clear abuse of discretion, we will not disturb, on appeal, a district court's determination of child custody.[2]

### Rebuttable presumption in domestic violence cases

In light of the dangers that domestic violence poses to a child's physical, emotional and mental health, our Legislature enacted NRS 125C.230(1), which creates a rebuttable presumption that a person who has engaged in one or more acts of domestic violence should not be given custody of a child:

---

[2]*Primm v. Lopes,* 109 Nev. 502, 504, 853 P.2d 103, 104 (1993).

Except as otherwise provided in NRS 125C.210 and 125C.220, a determination by the court after an evidentiary hearing and finding by clear and convincing evidence that either parent or any other person seeking custody of a child has engaged in one or more acts of domestic violence against the child, a parent of the child or any other person residing with the child creates a rebuttable presumption that sole or joint custody of the child by the perpetrator of the domestic violence is not in the best interest of the child. Upon making such a determination, the court shall set forth:

(a) Findings of fact that support the determination that one or more acts of domestic violence occurred; and

(b) Findings that the custody or visitation arrangement ordered by the court adequately protects the child and the parent or other victim of domestic violence who resided with the child.[3]

*Clear and convincing evidence of domestic violence*

Carol argues that clear and convincing evidence did not exist for the district court to conclude that acts of domestic violence had been committed against any of the children. We disagree.

We initially note that by requiring the court, under NRS 125C.230(1), to conduct a hearing and to find by clear and convincing evidence that domestic violence occurred, the Legislature has protected innocent parents from unfounded allegations. Here, the court heard testimony from over twenty witnesses, including the minor children of the marriage. Admittedly, some of the evidence given by the children was either internally inconsistent or was contradicted in some way. Carol conceded, however, that one very serious physical altercation occurred with one of the children, and the children reported instances of kicking, punching, and administration of beatings with a blunt object (a hairbrush) causing significant bleeding. At least one of these instances was corroborated by the oldest child's companion.

The district court ruled on the totality of the evidence as follows:

Based upon the testimony of [three of the children], the Court finds by clear and convincing evidence that Carol committed acts of domestic violence against the . . . children. The court credits the testimony of [three daughters] and Jon, and does not credit any testimony to the contrary. To the extent that the physical altercations implicate conditions arguably

---

[3]The Legislature also included this rebuttable presumption provision in NRS 125.480(5), which concerns custody determinations in divorce proceedings.

amounting to "provocation" or "mutual combat," the Court finds that Carol was the primary aggressor. This finding is based upon the testimony indicating a history of this type of behavior, and self defense type actions by other persons in the family.

. . . .

. . . Most significantly, the extent of the domestic violence was revealed to Jon post-divorce, and there have been post-divorce incidents of domestic violence. [One daughter] has expressed her desire to live with her father. [Another daughter] has recently experienced a change in demeanor, in which she has become withdrawn and distant.

While Carol makes numerous assessments of the credibility of Jon's witnesses, we will not reweigh the credibility of witnesses on appeal; that duty rests within the trier of fact's sound discretion.[4] We conclude that substantial evidence supports the district court's finding of domestic violence by clear and convincing evidence.[5]

*Custody modification*

Carol argues that the district court should not have relied upon evidence of alleged physical abuse that occurred before the divorce. Further, Carol argues that the district court erred in determining that Jon satisfied the analysis under *Murphy v. Murphy*[6] for custody modification.

In *Murphy,* we adopted a two-part test for custody changes, which applies when one parent has primary physical custody: "A change of custody is warranted only when: (1) the circumstances of the parents have been materially altered; and (2) the child's welfare would be substantially enhanced by the change."[7] *Murphy's* first "changed circumstances" prong is required by most courts and is based on the principle of res judicata.[8] As we recognized in *Mosley v. Figliuzzi,*[9] res judicata prevents "persons dissatisfied

---

[4]*See Krause Inc. v. Little,* 117 Nev. 929, 933, 34 P.3d 566, 569 (2001).

[5]*See, e.g., Matter of Parental Rights as to N.J.,* 116 Nev. 790, 795, 8 P.3d 126, 129 (2000) (noting that this court will uphold parental termination orders, which require a finding by clear and convincing evidence, if substantial evidence in the record supports the district court's finding).

[6]84 Nev. 710, 711, 447 P.2d 664, 665 (1968).

[7]*Id.* In joint physical custody cases, the child's best interest is the only factor governing modification. NRS 125.510(2); *see also Hopper v. Hopper,* 113 Nev. 1138, 1142 n.2, 946 P.2d 171, 174 n.2 (1997).

[8]Sally Burnett Sharp, *Modification of Agreement-Based Custody Decrees: Unitary or Dual Standard?,* 68 Va. L. Rev. 1263, 1265-66 (1982).

[9]113 Nev. 51, 58, 930 P.2d 1110, 1114 (1997).

with custody decrees [from filing] immediate, repetitive, serial motions until the right circumstances or the right judge allows them to achieve a different result, based on essentially the same facts.''

We utilized the *Murphy* test in two noteworthy subsequent cases: *McMonigle v. McMonigle*[10] and *Hopper v. Hopper*.[11] These cases relied on an Oregon case, *Stevens v. Stevens*,[12] in concluding that '' '[t]he moving party in a custody proceeding must show that circumstances . . . have substantially changed *since* the most recent custodial order. . . . Events that took place before that proceeding [are] inadmissible to establish a change of circumstances.' ''[13] In *McMonigle,* the custodial parent had relocated before the final decree was entered, and the decree reflected this relocation. The non-custodial parent then moved for a change of custody. In granting the motion, the district court was ''preoccupied'' with the custodial parent's relocation.[14] Additionally, the court considered evidence that before the divorce decree was entered, the custodial parent had failed to provide the non-custodial parent with reports about the .child.[15] On appeal, this court reversed the district court's order changing custody, stating that the district court had improperly relied on inadmissible pre-decree evidence in rendering its decision.[16]

In *Hopper,* the parties stipulated to custody.[17] At that time, the non-custodial parent was aware that the custodial parent had a tendency to yell at the child. In reversing the district court's subsequent order changing custody, which was based, in part, on the custodial parent's yelling, this court reiterated that actions preceding the prior custody determination cannot be admitted to show a change in circumstances.[18]

Our *McMonigle* and *Hopper* decisions include broad language suggesting that important facts relevant to the child's best interests, if they existed at the time of the prior custody determination, cannot be introduced at a later proceeding, even if these facts were unknown to one of the parties or the court when the prior determi-

---

[10]110 Nev. 1407, 887 P.2d 742 (1994).

[11]113 Nev. 1138, 946 P.2d 171.

[12]810 P.2d 1334 (Or. Ct. App. 1991).

[13]*McMonigle,* 110 Nev. at 1408, 887 P.2d at 743 (quoting *Stevens,* 810 P.2d at 1336); *see also Hopper,* 113 Nev. at 1143, 946 P.2d at 174-75; *see also Mosley,* 113 Nev. at 58, 930 P.2d at 1115 (recognizing *Stevens* for the proposition that pre-decree issues cannot be relitigated).

[14]*McMonigle,* 110 Nev. at 1409, 887 P.2d at 744.

[15]*Id.* at 1409, 887 P.2d at 743-44.

[16]*Id.* at 1409, 887 P.2d at 744.

[17]113 Nev. at 1140, 946 P.2d at 173.

[18]*Id.* at 1143-44, 946 P.2d at 174-75.

nation was made. Nevertheless, this court has never expressly determined whether generalized principles underlying the res judicata doctrine should prohibit parties from introducing evidence of domestic violence that was not previously considered by the court in a custody matter.

Although the doctrine of res judicata, as applied through the changed circumstances doctrine, promotes finality and therefore stability in child custody cases, it should not be used to preclude parties from introducing evidence of domestic violence that was unknown to a party or to the court when the prior custody determination was made. We recognized this principle long ago in *Abell v. District Court,*[19] when we concluded that a change of custody may be based on material facts that existed when the decree was entered but were unknown to either the moving party or the court. Consequently, we conclude that the changed circumstances doctrine does not apply when a party seeking to change custody attempts to introduce evidence of domestic violence if the moving party or the court was unaware of the existence or extent of the conduct when the court rendered its prior custody decision. To the extent that *McMonigle* and *Hopper* can be read as inconsistent with this conclusion, they are overruled.[20]

The district court has an obligation to make a sound decision on the paramount concern in custody cases—the child's best interests.[21] Although the res judicata doctrine, as articulated in *Murphy*'s "changed circumstances" requirement, serves an extremely important function in preventing dissatisfied parties from filing repetitive, serial motions in an attempt to manipulate the judicial system, res judicata principles should not prevent a court from ensuring that the child's best interests are served. As our Legislature has recognized, domestic violence poses a very real threat to a child's safety and well-being. The court must hear *all* information regarding domestic violence in order to determine the child's best interests. Domestic violence, by its very nature, may be difficult to discover. Once it is discovered, the court should not be precluded from considering it simply because it was not previously raised. Consequently, evidence of domestic violence that was not

---

[19]58 Nev. 89, 96-97, 71 P.2d 111, 113 (1937).

[20]Additionally, *Mosley v. Figliuzzi,* 113 Nev. 51, 930 P.2d 1110 (1997), is overruled to the extent that it can be read to preclude evidence of which the moving party was unaware when the prior custody order was entered.

[21]*See, e.g.,* NRS 125.480 (providing that the court's sole consideration is the child's best interest when the court makes custody decisions in divorce proceedings).

previously discovered, or the extent of which was unknown, when the prior custody order was entered is properly considered by the district court in determining custody, along with any post-order domestic violence. Even previously litigated acts of domestic violence may need to be reviewed if additional acts occur.[22] As the North Dakota Supreme Court has recognized, ''The legislature intended that courts *presume* that *any* domestic violence negatively impacts the best interests of the children.''[23]

In this case, Jon was not aware of the extent of Carol's physical abuse until the summer of 2000, when two of the children came forward. Further, the parties had previously stipulated to the original custody arrangement, so the district court had considered no evidence with respect to parental fitness. Consequently, Jon could not have fully litigated this issue in the prior custody proceedings, and thus, the district court appropriately considered Carol's pre-decree conduct in making its most recent child custody determination.

With respect to the second prong of *Murphy,* whether ''the child's welfare would be substantially enhanced by [a custody] change,'' the rebuttable presumption set forth in NRS 125C.230 subsumes this inquiry. The statute requires that the court presume that the child's best interests are served by being placed with the non-offending parent. Consequently, in custody cases involving alleged acts of domestic violence, *Murphy*'s second prong plays no role in the court's custody determination. In this case, the district court concluded that, under NRS 125C.230, a rebuttable presumption arose that the sole or joint custody of the children by Carol was not in the children's best interests. The court then found that Carol had not rebutted the presumption. We conclude that the district court did not abuse its discretion in finding that Carol had not rebutted the NRS 125C.230 presumption.

### Other issues

Carol argues that the district court failed to properly take into account other issues concerning the children's best interests. We disagree. In determining custody modification, the district court took into account the status of Jon's employment prospects, the financial abilities of Jon's current spouse, and the relative residential situations of the parties. Given the district court's findings concerning the domestic violence perpetrated by Carol against the parties'

---

[22]We note, however, that the doctrine of res judicata, as articulated in *Murphy*'s changed circumstances prong, would preclude parties from relitigating isolated instances of domestic violence that the court has previously examined.

[23]*Heck v. Reed,* 529 N.W.2d 155, 164 (N.D. 1995).

minor children, we cannot conclude that an abuse of discretion occurred with regard to these other factual issues.

Carol also argues that under local district court rule 5(5),[24] Jeff Osmonson, the child advocate appointed by the court, did not meet the requirements for a qualified child advocate under NRS 433.209.[25] We conclude that while Mr. Osmonson did not meet the technical definition of a child advocate under NRS 433.209, his qualifications were in substantial compliance with the statute.

Carol claims that Jon's counsel violated the "One Family/One Judge" policy set forth in the local district court rules[26] by setting the motion to modify before District Judge J. Michael Memeo. Although Judge Memeo signed the original decree, Carol claims that, because the intervening order modifying child support was signed by District Judge Jack Ames, the motion to modify should have been placed upon Judge Ames' calendar. First, we note that Carol lodged no formal attempt to disqualify Judge Memeo. Second, since Judge Memeo heard the original application for divorce, no substantial violation of the local rules occurred.

Carol also represents that the lawyer for the children ultimately secured employment with Judge Memeo as a judicial law clerk. However, she makes no claim as to how the custody determination was somehow tainted by that turn of events.

[24]4JDCR 5(5)(b)(5) states, "A Child Advocate must be a 'person professionally qualified in the field of psychiatric mental health' as defined by NRS 433.209."

[25]NRS 433.209 states:

"Person professionally qualified in the field of psychiatric mental health" means:

1. A psychiatrist licensed to practice medicine in the State of Nevada and certified by the American Board of Psychiatry and Neurology;

2. A psychologist licensed to practice in this state;

3. A social worker who holds a master's degree in social work, is licensed by the state as a clinical social worker and is employed by the Division;

4. A registered nurse who:

(a) Is licensed to practice professional nursing in this state;

(b) Holds a master's degree in the field of psychiatric nursing; and

(c) Is employed by the Division.

5. A marriage and family therapist licensed pursuant to chapter 641A of NRS.

[26]4JDCR 2(5) states:

It is the intent of the District Judges, to the extent reasonably possible, to implement a "One Family/One Judge" assignment of domestic relations cases. The Court Clerk and attorneys practicing within the Fourth Judicial District Court shall bring to the attention of the District Judges cases which might be transferred between departments in order to accomplish this goal.

## CONCLUSION

Unless the district court has clearly abused its discretion, we will not disturb, on appeal, its child custody determination. In this case, the district court did not abuse its discretion in modifying the custody arrangement concerning the minor children. Therefore, we affirm the district court's order.

SHEARING, C. J., AGOSTI, ROSE, BECKER and GIBBONS, JJ., concur.