LISA LITZ, Formerly Known as LISA BENNUM, Appellant, *v.* LEILANI BENNUM and DAVID BENNUM, Respondents.

No. 25314

January 24, 1995                                     888 P.2d 438

[Rehearing denied July 12, 1995]

*Skelly & Sheehan*, Reno, for Appellant.

*Hoffman, Test and Guinan*, Reno, for Respondents.

# OPINION

*Per Curiam:*

## FACTS

Appellant Lisa Litz ("Lisa") is the only child of respondents Leilani and David Bennum ("the Bennums"). When Lisa was seventeen, she met Laz Hernandez ("Laz"). On July 25, 1986, Lisa gave birth to Johnny. During this period, Lisa and Laz were convicted of felonies and received five years probation.

After Johnny was born, Lisa, Laz and Johnny lived with Lisa's parents for approximately one year. In 1987, Lisa and Laz moved with Johnny to a friend's house. Mrs. Bennum took care of Johnny while Lisa worked during the day. A short time later, Lisa and Laz failed their drug tests that were required for them to remain on probation. Knowing they would be arrested, they left with Johnny for California, having been married the day before. They were apprehended in Fresno after approximately two weeks. A few days later, the Bennums went to California to retrieve Johnny from foster care.

While in custody, Lisa and Laz chose to sign consent forms naming the Bennums temporary guardians of Johnny. Lisa testified that she consented to the guardianship to prevent Johnny from being placed in foster care. She also testified that she was not tricked in any way and that it was her choice to consent to the guardianship.

Lisa spent six months in prison in Carson City and six months in the Restitution Center in Reno. During that time, the Bennums regularly brought Johnny to see her. After leaving prison in 1988, Lisa lived in an apartment in Reno, seeing Johnny on a regular basis at the Bennums' house. She also divorced Laz.

In early 1989, Lisa met John Litz ("John"). Lisa and John are now married and have a baby of their own. They have a house in a quiet residential area of Reno with schools nearby. John has a stable job as a mechanic. Despite all this, the Bennums refused to allow Johnny to visit his mother overnight. The Bennums did allow Lisa to visit Johnny as well as take him to her house during the day.

In June 1992, Lisa filed a petition for reunification and dissolution of her parents' guardianship of Johnny. She also petitioned the court to gain overnight visits with Johnny. The Bennums filed an opposition to Lisa's petition as well as a motion for referral to mediation, appointment of a CASA volunteer and appointment of an independent psychologist. Hearings were held on September 30, 1993, and November 17, 1993. Lisa, the Bennums, John, and

two psychologists, Dr. Jerry Nims and Dr. Earl Nielson, testified at the hearings.

Dr. Nims testified that he had interviewed Lisa, John, both Leilani and David Bennum, and Johnny. He testified that Johnny is a well-adjusted child, though somewhat concerned about his grandparents' and his mother's actions. Johnny is closely bonded with the Bennums, but he also has positive feelings about Lisa and John. Dr. Nims testified that Johnny would not be devastated by a move to Lisa's house and that given time, "he would come to some new reasonable level of adjustment."

Dr. Nielson, who had been engaged by the Bennums as a therapist for Johnny, testified that he had met with Johnny more than twenty times. Dr. Nielson stated that Johnny is a very bright child who reads at a level two years above his age. Johnny's relationship with Lisa and John is good, and Johnny appears to enjoy spending time at their home. Dr. Nielson went on to state that he saw Johnny as "being again attached to both sides but perceiving that he is a part of his grandparents' family and that that's his parental resource." Dr. Nielson stated that should Johnny be returned to Lisa, "he could cope and adjust. . . . Johnny is very strong and he will cope. This is a kid who will be okay."

The district court acknowledged the parental preference doctrine, but held that it was just one of many considerations, the most important being the best interest of the child. Ultimately, the court granted joint legal custody to Lisa and the Bennums and primary physical custody to the Bennums. The court also ordered that Lisa would have reasonable rights of visitation.

Lisa appeals, arguing that the district court erred in holding that the parental preference doctrine was just one consideration in a best interest of the child analysis in determining custody. We agree and accordingly reverse and remand the decision of the district court.

## DISCUSSION

This court has held that the trial court enjoys broad discretionary powers in determining questions of child custody. Sims v. Sims, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993). The trial court's determination will not be disturbed absent an abuse of discretion. However, this court must be satisfied that appropriate reasoning supported the trial court's decision. *Id.*

The district court held that because a lengthy guardianship existed in this case, less weight should be given to the parental

preference doctrine. It is accurate that the length of the guardianship is one factor that may have been considered by the district court; however, it should not have been determinative of the outcome of this case. We conclude that the parental preference policy is a rebuttable presumption that must be overcome either by a showing that the parent is unfit or other extraordinary circumstances. *See* Norris v. Graville, 93 Nev. 71, 73, 589 P.2d 1024, 1025 (1979); McGaffin v. Roberts, 479 A.2d 176 (Conn. 1984), *cert. denied,* 470 U.S. 1050 (1985) (burden of proof on nonparent).

The Bennums argue that Fisher v. Fisher, 99 Nev. 762, 670 P.2d 572 (1983), deemphasizes the parental preference doctrine. In *Fisher* this court cited several decisions from other states, noting that ''[t]he common theme of all of the above cases is a careful attention to the facts of each particular dispute and a primary emphasis upon the best interest of the child. These concerns are accorded no less consideration in Nevada.'' *Id.* However, the court recognized that the legislature has clearly inserted a ''parental preference'' into guardianship determination. The court then held that '' 'the welfare of the child is superior to the claim of the parent so that the right of the natural parent must yield where it clearly appears that the child's welfare requires that custody be granted to another.' '' *Id.* (quoting Doe v. Doe, 399 N.Y.S.2d 977, 982 (N.Y. Sup. Ct. 1977)).

Therefore, the *Fisher* court did not change the fact that the parental preference doctrine is a presumption that must be overcome if the parent is fit. Instead, the *Fisher* court emphasized that when it clearly appears that the child's welfare requires a change of custody, then the natural parent presumption may be overcome. However, this court has made it clear that ''the best interest of the child is usually served by awarding his custody to a fit parent.'' McGlone v. McGlone, 86 Nev. 14, 17, 464 P.2d 27, 29 (1970).

In the instant case, it is undisputed that Lisa is currently a fit parent. Although the Bennums have been Johnny's guardians for most of his life, it was Lisa's choice to place Johnny in the Bennums' care in order to promote his best interest. This court certainly does not want to discourage parents from willingly granting temporary guardianships, while working through problems in their own lives, if that is in the child's best interest.

Therefore, because Lisa is a fit parent and has continually played an active role in Johnny's life, the fact that the Bennums have had custody of Johnny for an extended period of time does not amount to an extraordinary circumstance that could overcome the parental preference doctrine.

The district court erred in determining that the parental preference doctrine was just one factor to be considered, and not a rebuttable presumption. Therefore, the district court also erred in determining that Lisa could not dissolve the temporary guardianship.

We emphasize, however, that the Bennums have dedicated their lives to the well-being of Johnny and should be awarded liberal visitation rights so that they may play a large role in Johnny's life and continue to serve as a positive influence.

Accordingly, the district court's order awarding primary physical custody of Johnny to the Bennums is reversed, and this case is remanded to the district court for proceedings consistent with this opinion.