SHINICHI OGAWA, APPELLANT, *v.*
YOKO OGAWA, RESPONDENT.

No. 48571

November 12, 2009                    221 P.3d 699

*McFarling Law Group* and *Emily M. McFarling Benson*, Las Vegas, for Appellant.

*Xavier Gonzales*, Las Vegas, for Respondent.

*Robert Cerceo*, Reno; *Katherine L. Provost*, Las Vegas; and *Marshal S. Willick*, Las Vegas, for Amicus Curiae State Bar of Nevada, Family Law Section.

Before HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.

## OPINION

*Per Curiam:*

This appeal involves an international child custody dispute and divorce action between appellant, who resides in Japan with the parties' three children, and respondent, who lives in Henderson, Nevada. The first of three issues in this appeal is whether the district court had home-state jurisdiction to make child custody determinations under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at NRS Chapter 125A, when respondent did not file her divorce complaint and motion regarding child custody until eight months after the children left the State of Nevada. The second issue concerns whether the district court properly found that Nevada was the children's state of "habitual residence" and granted respondent's motion for the immediate return of the children, when Japan is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction—a treaty aimed at ensuring the prompt return of children who have been wrongfully removed from their state of habitual residence to a signatory country. The final issue in this appeal pertains to the divorce decree and whether the district court properly entered the decree by default, awarding respondent all of the community property, spousal and child support, and attorney fees and costs, even though appellant filed an answer to the divorce complaint and a countercomplaint for divorce, and he made an appearance through counsel at the divorce hearing.

Addressing the first issue, the district court properly determined that it had jurisdiction to make custody decisions because Nevada is the children's "home state" under the UCCJEA. Although the children had been absent from the state for eight months when respondent filed her custody action, the testimony and evidence supported that the children left Nevada for a temporary three-month vacation, and under the UCCJEA, temporary absences do not interrupt the six-month pre-complaint residency period necessary to establish home state jurisdiction. Thus, taking into account the temporary absence, the action was filed timely under the UCCJEA, and the Nevada district court had home-state jurisdiction in this matter.

As for appellant's challenge to the order directing the children's return to the United States, the district court properly entered the order to the extent that it relied on its authority to enter custody orders under the UCCJEA. Although the order is unenforceable under the Hague Convention, as implemented in the United States by the International Child Abduction Remedies Act (ICARA), 42 U.S.C.

§§ 11601-11611 (1988), since Japan has not signed the Hague Convention, the district court nevertheless properly entered the order in the context of the custody proceeding. While the Hague Convention does not apply here, the parties remained free to pursue other remedies and the Convention's nonapplicability did not limit the district court's authority to order the children's return. Accordingly, although the district court erred to the extent that it relied on the Hague Convention, it otherwise properly exercised its jurisdiction over the custody matter in granting respondent's motion seeking the children's immediate return.

Finally, regarding the default divorce decree, because appellant made an appearance and answered the complaint, evidencing his intent to defend against the action, default was inappropriate. The district court therefore erred by entering a default judgment against appellant, awarding respondent all of the community property and child and spousal support in amounts not supported by the evidence, and awarding respondent sole legal and physical custody of the children and attorney fees and costs, without considering the merits of the case.

## PROCEDURAL HISTORY AND FACTS

Appellant Shinichi Ogawa and respondent Yoko Ogawa were married in Japan in 1997 and, beginning a series of transpacific moves, entered the U.S. shortly thereafter. Between 1998 and 2002, the parties had three children, all born in Japan, and purchased a home in Henderson, Nevada; Yoko became a lawful permanent resident of the U.S. After several moves back and forth between the U.S. and Japan, the parties resided in Japan with the children.

Thereafter, in January 2003, Yoko, the three children, and Shinichi's parents traveled to the U.S. Shinichi, who had opened a card dealers' school in Japan, remained in that country, and apparently at that time, the parties intended that Yoko and the children would return to Japan at some future date. But in May 2003, Yoko decided that it would be better for her and the children to remain in the United States, and that fall, the older children were enrolled in and began attending school in Henderson. The children returned to Japan in June 2004. The circumstances surrounding that return are disputed by the parties. According to Yoko, the children returned to Japan at that time with Shinichi's mother for a summer vacation only.[1] Yoko maintained that it was not until August 2004, when the children were supposed to return from vacation, when Shinichi informed her that the children would not be returning to the U.S. According to Shinichi, however, the entire family, including Yoko, was preparing to reside in Japan permanently, and the children thus returned to Japan with Yoko's consent. At any rate, the children have

---

[1] Neither party specified what day in June 2004 the children left for Japan.

remained in Japan with Shinichi since June 2004. In the meantime, Shinichi, with his father, purchased a home in Japan.

## District court proceedings

### Yoko's divorce complaint and motion for return of the children

Approximately eight months after the parties' children left for Japan, on February 3, 2005, Yoko filed in the Nevada district court a complaint for divorce, along with an emergency motion for the immediate return to the United States of internationally abducted minor children. In her motion, Yoko acknowledged that Japan is not a signatory to the Hague Convention but suggested that the treaty could guide the district court in deciding the child custody issues. The district court apparently held a hearing on the motion on March 5, 2005. In the resultant order, the court noted that only Yoko's attorney was present at the hearing and that Shinichi had yet to be served with any court documents. Nevertheless, the court determined that it had subject matter jurisdiction over the custody issue, since Nevada was the children's "habitual residence," and entered an ex parte order on March 29, 2005, awarding temporary sole custody of the children to Yoko and ordering Shinichi to surrender physical custody of the children to Yoko, effective upon service of the order.

Proof of service of the complaint, summons, motion, and order was not filed until January 10, 2006. Shortly thereafter, Shinichi, through U.S. counsel, filed motions to reconsider and vacate the March 29 order, to quash all issues related to the children, and for attorney fees and costs, arguing that the district court lacked subject matter jurisdiction over any custody issues. In February 2006, Yoko filed a motion for an order to show cause why Shinichi should not be held in contempt for failure to comply with the district court's March 29 order directing him to return the children to the U.S. At a hearing on the motions, at which Shinichi appeared through counsel only, the court entered an order reaffirming its March 29 order and confirming that it had jurisdiction over the custody matter under the UCCJEA.[2] The court found that Shinichi had wrongfully withheld the children in Japan without Yoko's permission between August 30, 2004, when they were supposed to return from summer vacation, and February 3, 2005, when Yoko filed the emergency motion for custody and return of the children. Therefore, the court determined that that time did not affect the children's Nevada residency. The court's order directed Shinichi to file his answer to the complaint, and it continued the contempt portion of the hearing until May 31, 2006, ordering Shinichi to appear and show cause why he

---

[2]Shinichi thereafter appealed from that order, but this court dismissed the appeal, as temporary custody orders are not appealable. *See Ogawa v. Ogawa*, Docket No. 48108 (Order Dismissing Appeal, January 11, 2007).

should not be held in contempt for failing to return the children.[3] Shinichi filed an answer and countercomplaint for divorce on May 16, 2006. Although Shinichi did not personally appear at the May 31 contempt hearing, his attorney was present. The court allowed Shinichi until July 5, 2006, to return the children to Yoko in the U.S. The parties later stipulated that Shinichi would have until July 24, 2006, to return the children.

On July 6, 2006, however, Shinichi filed a motion requesting, among other things, temporary custody of the children.[4] In his motion, he stated that he had urged Yoko to return to Japan with the children. Shinichi also pointed out that when Yoko's emergency motion for the return of the children was heard and decided, he had not been served with any court documents. He asserted that it was in the children's best interests that he be awarded sole physical custody. The children were not returned, and Yoko later opposed Shinichi's motion for temporary custody, arguing that Shinichi had violated the court order and stipulation by failing to return the children by July 24.

After a hearing, at which Shinichi did not personally appear but at which his attorney was present, the court entered an order on October 6, 2006, finding Shinichi in contempt for not returning the children and directing him to do so immediately. The court also denied Shinichi's motion for temporary custody and awarded Yoko attorney fees. Shinichi did not return the children to the U.S.

### Divorce hearing

The divorce hearing took place on September 20, 2006, and again, Shinichi did not personally appear. The court addressed Shinichi's motion to continue the hearing, which apparently was filed that same day and was based on his objection to the discovery commissioner's recommendation that Shinichi not be allowed to conduct discovery for failing to comply with NRCP 26(a) and with the district court's earlier orders to return the children. The district court denied the continuance, finding the motion untimely and the discovery sanction proper, since, contrary to NRCP 26(a), the joint case conference report was not filed until after the request for discovery was propounded and Shinichi had acted with "unclean

---

[3]Although the court's order directed Shinichi to appear at the contempt hearing, it did not specify that he was required to appear personally or whether his attorney could appear on his behalf. An earlier order setting the contempt hearing specifically directed that Shinichi "may appear personally or by way of attorney" and that his failure to so appear would be deemed a waiver of his right to a contempt hearing.

[4]Attached as an exhibit to Shinichi's motion was an April 10, 2006, "Preliminary Pleading," which appears to be a translated version of an answer to a divorce complaint filed in the family court in Fukuoka, Japan. The exhibit lists Yoko as the plaintiff and Shinichi as the defendant.

hands'' in failing to comply with the court's orders to return the children.

In addressing the divorce matter, the court stated that it would enter a default judgment against Shinichi ''based on his non-appearance'' and that the matter would proceed for a prove-up hearing. In that regard, Yoko testified that she had lived in the Henderson marital residence since it was purchased in 2000, and she stated that she was fit to be awarded sole legal and physical custody of the children. When asked whether Shinichi was able to provide support, Yoko testified, ''I believe he can, but I'm not so sure,'' explaining that she was asking for $798 per month in child support because he ''worked for a time during the marriage.'' Yoko's attorney stated that, ''upon information and belief,'' $798 per month was 29 percent of Shinichi's income. Yoko requested $1,000 per month as ''permanent'' spousal support and full interest in the marital residence.

The court stated that whatever was requested in the complaint would be mirrored in the decree. When Yoko's attorney explained that the complaint contemplated an equitable division of property, the court stated that Yoko could ask for anything, and the court would not dispute it. Shinichi's attorney argued that the community property should be divided equally, as the law presumes equal contributions. According to Yoko, she was requesting all of the community property because she did not think that Shinichi would pay any support or abide by the court's orders. Yoko also testified that she signed a quitclaim deed, relinquishing title in the marital house to Shinichi, but that she did not realize what she was signing at the time. She therefore asked the court to set aside the quitclaim deed. Yoko then testified that she had incurred $15,000 in attorney fees and $11,000 in costs litigating the divorce matter. The court indicated at the hearing that it would require a memorandum before it awarded attorney fees or costs.[5] As reflected in its subsequent written order, the court explained that the spousal support award would be retroactive to the time when Yoko filed her complaint and that child support arrears would apply from the time of separation in June 2004. As for personal property, the court confirmed that Yoko would be awarded all of it, with the parties being responsible for debts in their own names. Finally, the court stated that it would award Yoko a community interest in the house that Shinichi supposedly purchased with his father in Japan.

The court then allowed Shinichi's attorney limited cross-examination of Yoko, explaining that because Shinichi was ''defaulted,'' the attorney would not be allowed to go into the merits of

---

[5]Although not included in the appendix, from the district court docket entries, it appears that memoranda of costs and attorney fees were filed in the district court on November 3, 2006.

the case. Nearly every time Shinichi's attorney attempted to ask Yoko a question, however, the court interrupted, stating that the questions were unnecessary. When Shinichi's attorney asked Yoko from what sources the support requests were derived, Yoko responded that the requests were based upon Shinichi's income in 2000, when he worked at a Las Vegas casino.

The district court subsequently entered a default divorce decree on November 22, 2006, explaining that Shinichi was "defaulted" based on his "non-appearance." The court awarded Yoko spousal and child support (including arrearages), the marital home, all of the household furnishings and personal property in her possession, a car, one half of Shinichi's 25-percent interest in the house in Japan, and attorney fees and costs. The decree also awarded Yoko sole legal and physical custody of the children, with Shinichi to have "no contact with the minor children." Shinichi timely appealed.

## DISCUSSION

On appeal, Shinichi raises three issues: whether the district court properly (1) exercised subject matter jurisdiction over the child custody issue, (2) relied on the Hague Convention and ordered the children's return to the United States, and (3) entered a default divorce decree against him.[6]

*The district court properly determined that Nevada is the children's home state*

Shinichi argues that because the children did not reside in Nevada at any time during the six months before Yoko filed her complaint, the Nevada family court lacked jurisdiction to enter any custody orders. In response, Yoko asserts that, although she filed her complaint eight months after the children left Nevada, their absence from Nevada was intended to be a temporary vacation, which was wrongfully extended by Shinichi, and thus, that time should not count in determining home state jurisdiction.

Subject matter jurisdiction is a question of law subject to de novo review. *See Gosserand v. Gosserand*, 230 S.W.3d 628, 631 (Mo. Ct. App. 2007) (explaining that whether a trial court has subject matter jurisdiction in an interstate child custody dispute is a question of law, reviewed de novo); *Harshberger v. Harshberger*, 724 N.W.2d 148, 154 (N.D. 2006) (recognizing that when the jurisdictional facts are

---

[6]The Family Law Section of the Nevada State Bar has filed an amicus curiae brief addressing the first two issues and generally agreeing with Shinichi's position.

not in dispute, the question of subject matter jurisdiction is a question of law, subject to an appellate court's de novo review); *cf. Baker v. Dist. Ct.*, 116 Nev. 527, 531, 999 P.2d 1020, 1023 (2000) (pointing out that, when the facts are not disputed, this court reviews de novo a district court's determination that personal jurisdiction can be properly exercised). The district court's factual findings, however, are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence. *International Fid. Ins. v. State of Nevada*, 122 Nev. 39, 42, 126 P.3d 1133, 1134-35 (2006).

Subject matter jurisdiction over child custody issues is governed by the UCCJEA. NRS 125A.305. The UCCJEA's objectives are to prevent jurisdictional conflicts and relitigation of child custody issues and to deter child abduction. UCCJEA § 101 (1997), cmt., 9 U.L.A. 657 (1999) (explaining the UCCJEA's purposes); *see also, e.g., Ruffier v. Ruffier*, 190 S.W.3d 884, 889 (Tex. App. 2006); *see generally* NRS Chapter 125A. The UCCJEA addresses those objectives by limiting to one court—usually the "home state" court—the authority to make custody determinations, even though more than one jurisdiction might have personal jurisdiction over the parties and a legitimate interest in the parent-child relationship at issue. *See Hart v. Kozik*, 242 S.W.3d 102, 106-07 (Tex. App. 2007). The UCCJEA thus elevates the "home state" to principal importance in custody determinations. *See* NRS 125A.305.

"Home state" is defined as the state in which a child lived with a parent for at least six consecutive months, including any temporary absence from the state, immediately before the child custody proceeding commenced. NRS 125A.085. Thus, the definition "permits a period of temporary absence during the six-month time frame necessary to establish home-state residency." *Felty v. Felty*, 882 N.Y.S.2d 504, 508 (App. Div. 2009). If Nevada either is the child's home state on the date when the child custody proceedings commence, or was the child's home state within six months before the proceedings commenced and the child is absent from Nevada but a parent continues to live in Nevada, Nevada courts have jurisdictional priority to make initial child custody determinations. NRS 125A.305(1)(a). The UCCJEA treats foreign countries as "sister" U.S. states. NRS 125A.225.

In this case, testimony and other evidence in the record substantially supports the district court's finding that when the children left for Japan in June 2004, their absence was intended to be a temporary three-month vacation. Thus, under the UCCJEA, the children's absence from June through August did not interrupt the six-month

pre-complaint residency requirement, *Felty*, 882 N.Y.S.2d at 509, and Nevada was their home state.[7] As Nevada was the children's home state within six months of filing the action, and Yoko continued to live in Nevada after the children left and when the action was commenced, Yoko filed her custody action within the time frame allowed under the UCCJEA, and the district court properly exercised home-state jurisdiction.

*Although the Hague Convention does not provide a basis for the district court to order the children's return to the U.S., the district court had authority to enter custody orders, since it had jurisdiction over the custody dispute under the UCCJEA*

■■■■■

Shinichi argues that the Hague Convention does not apply in this matter, since Japan is not a Hague Convention signatory, and since, regardless, no findings were made to support the district court's conclusion that Nevada is the children's state of habitual residence.

The Hague Convention on the Civil Aspects of International Child Abduction is an international treaty, the purpose of which is to promote the prompt return of children who have been wrongfully removed from their state of habitual residence. 42 U.S.C. §§ 11601-11611 (1988). In this case, the district court entered an order directing the children's immediate return to the United States based on its finding that Nevada is the children's place of "habitual residence," suggesting that it applied the Hague Convention and its implementing legislation, the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 11601-11611 (1988). But since the children were removed to Japan, a nonsignatory country, the Hague Convention does not apply, and Yoko thus has no remedy under the Convention. The district court, however, properly granted Yoko's motion seeking the children's return to the U.S., since the Convention's nonapplicability did not limit the court's authority to order the children's return, and the court had jurisdiction to enter such orders in the context of the custody matter.

■■■■■

The Hague Convention's scope and reach is limited. The Department of State, the designated Central Authority of the United States under the Convention, *see* 42 U.S.C. § 11606(a), Exec. Order No. 12648, 53 Fed. Reg. 30,637 (Aug. 15, 1988), has promulgated regulations setting forth the procedures to be followed in situations involving a child abducted from the United States, specifically stating

---

[7]In light of this conclusion, we need not address Yoko's argument that the time for filing the child custody action should be equitably tolled by Shinichi's allegedly unjustified conduct in retaining the children in Japan.

that the regulations apply only when the Department of State receives "an application requesting access to a child or return of a child abducted from the United States and taken to another country party to the Convention." 22 C.F.R. § 94.7 (2009). Thus, the Hague Convention's network of international child abduction laws "can operate only between two signatory states." *U.S. v. Amer*, 110 F.3d 873, 881 (2d Cir. 1997) (explaining that the Hague Convention principles are applicable only to those countries that have signed the Convention and thereby agreed to abide by its terms); *Taveras v. Taveras*, 397 F. Supp. 2d 908, 912 (S.D. Ohio 2005) (acknowledging that there is no remedy under the Hague Convention when a nonsignatory country is involved and that "hard-line view" applies because "only those countries that are signatories have an obligation to reciprocate by affording litigants the same remedies in their courts"); *Mezo v. Elmergawi*, 855 F. Supp. 59, 63 (E.D.N.Y. 1994) (same); *Matter of Mohsen*, 715 F. Supp. 1063, 1065 (D. Wyo. 1989) (same); *see also* Smita Aiyar, *International Child Abductions Involving Non-Hague Convention States: The Need for a Uniform Approach*, 21 Emory Int'l L. Rev. 277, 294-97 (2007) (discussing remedies beyond the Hague Convention and noting that nonsignatory nations generally ignore signatory nations' requests for the children's return and instead apply their own laws to determine custody issues).

In interpreting ICARA, United States courts have held that a parent cannot use ICARA as a separate avenue for relief when a nonsignatory country is involved, as explained in *Mezo v. Elmergawi*, 855 F. Supp. 59. In that case, the court held that, "[i]f a child is taken from a signatory country and is retained in a non-signatory country, it appears that there is no remedy under either [ICARA] or the Hague Convention." *Id.* at 63. *See also, e.g.*, *de Silva v. Pitts*, 481 F.3d 1279, 1284 (10th Cir. 2007).

Although the Hague Convention is not applicable here, the district court had authority to order the children's return in the context of the custody proceeding, since it had jurisdiction to decide such matters under the UCCJEA. NRS 125A.305. Thus, the court properly exercised its discretion in granting Yoko's motion for the children's immediate return,[8] even though Hague Convention enforcement

---

[8]The original order directing the children's return was entered ex parte, before Shinichi was served with Yoko's motion and the divorce complaint and summons. After service was completed, however, Shinichi moved for reconsideration, to vacate the order, and to quash any custody issues. In his motions, Shinichi argued that the district court lacked subject matter jurisdiction under the UCCJEA to make any custody determinations; he did not challenge the order on due process grounds or address the merits of Yoko's motion. After a hearing on the motions, at which Shinichi appeared through counsel but did not present any evidence to controvert Yoko's assertion that the children were wrongfully retained in Japan, the district court determined that it had jurisdiction over the custody matter and reaffirmed the order directing the children's return to the U.S.

remedies do not apply.[9] *See Mezo*, 855 F. Supp. at 62-64; *Mohsen*, 715 F. Supp. at 1065.

*Default divorce decree*

Shinichi argues that, because he filed an answer and other pleadings and a pretrial memorandum, and since he appeared through his attorney, the district court's default divorce decree was improper. He further argues that the court should not have declared him defaulted for not appearing at the divorce hearing without a written application for a default judgment by Yoko, and without providing Shinichi three days' written notice, as required under the default judgment rule, NRCP 55(b)(2). He asserts that given his answer and countercomplaint, the divorce should have been decided on its merits, and he assigns error to the decree, which divided community property and awarded support and attorney fees based merely on Yoko's requests.

Yoko responds that Shinichi's failure to appear at the divorce hearing is an adequate basis for a default judgment. She points out that his pleadings are not evidence and argues that the district court, in dividing property and deciding support and attorney fees issues, properly granted her the relief that she requested. According to Yoko, it was enough for the court to allow Shinichi to participate through his attorney's limited cross-examination of Yoko at trial.

The general procedure governing defaults is set forth under NRCP 55(a), which provides, "When a party against whom a judgment for

---

In denying Shinichi's motion for reconsideration and to quash, the court noted that Shinichi, at that point, had an opportunity to respond, and that if he had evidence to support retaining the children in Japan, he could file another motion. He later filed a motion for temporary custody, and, after a hearing at which Shinichi was represented by counsel, the district court denied the motion. Since, on appeal, Shinichi does not challenge the order directing the children's return based on a lack of due process, and since he was given an opportunity to be heard, we do not further address whether the original order was properly entered before Shinichi was served with any court documents. We conclude that substantial evidence supports the court's order.

[9]To help fill the enforcement gap left by the Hague Convention and ICARA, Congress enacted the International Parental Kidnapping Crime Act (IPKCA), 18 U.S.C. § 1204(a)-(d) (2006), under which the United States Attorney's office can pursue criminal penalties against a parent who "removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights." 18 U.S.C. § 1204(a); *see Amer*, 110 F.3d at 877-79, 882 (upholding an Egyptian father's IPKCA conviction, noting that the Egyptian mother, who resided in the U.S., was unable to use civil remedies under the Hague Convention to effect the return of the children, since Egypt is not a signatory to the Hague Convention, and concluding that the IPKCA successfully fulfilled the "enforcement-gap-closing" function for which it was in part enacted).

affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.'' Then, a default judgment may be entered in accordance with NRCP 55(b), the relevant subsection of which requires three days' notice to the defaulted person if he has appeared in the action. NRCP 55(b)(2). Whether, under NRCP 55, a default judgment may be entered against a defendant who has answered and appeared through counsel at district court proceedings presents a legal question subject to de novo review. *Moseley v. Dist. Ct.*, 124 Nev. 654, 662, 188 P.3d 1136, 1142 (2008) (acknowledging that this court applies a de novo standard of review to issues concerning a rule's construction); *Settlemeyer & Sons v. Smith & Harmer*, 124 Nev. 1206, 1215, 197 P.3d 1051, 1057 (2008) (pointing out that when the issue raised on appeal involves a purely legal question, that issue is reviewed de novo).

Here, although Shinichi relies in part on NRCP 55(b)(2)'s notice requirement in asserting that the district court erred, that provision is irrelevant because NRCP 55 does not apply, since Shinichi answered the complaint and appeared at the divorce hearing through counsel. Thus, the district court erred in entering the default against him. *See In Interest of M.M.*, 708 So. 2d 990, 992 (Fla. Dist. Ct. App. 1998) (providing that a trial court's decision to enter a default judgment against parties for failing to appear at a hearing was improper because the parties '' 'appear[ed]' through their counsel''); *Owen v. Healy*, 896 A.2d 965, 967-68 (Me. 2006) (pointing out that the ''fact that a person is a party to a civil action does not in itself impose a legal obligation upon that person to be present at trial,'' and thus, when a party does not personally appear at trial, but his or her attorney does appear, a default against that party is not appropriate); *Rocky Produce, Inc. v. Frontera*, 449 N.W.2d 916, 917 (Mich. Ct. App. 1989) (reversing a default judgment entered based on a civil defendant's failure to personally appear at trial and holding that, ''absent a subpoena or order from the court to appear, a defendant in a civil case is not required to appear in person for a scheduled trial''); *In re Brandon A.*, 769 A.2d 586, 589 (R.I. 2001) (defining ''an appearance as '[a] coming into court as party to a suit, either in person or by attorney' '' (quoting *Nisenzon v. Sadowski*, 689 A.2d 1037, 1048 (R.I. 1997))); *LeBlanc v. LeBlanc*, 778 S.W.2d 865, 865 (Tex. 1989) (concluding that if a party is represented at trial by counsel, there is no default judgment even if the party does not personally appear); *cf. State v. Sargent*, 122 Nev. 210, 216, 128 P.3d 1052, 1056 (2006) (explaining, in the context of a criminal case proceeding in the justice court, that ''when the defendant files a waiver of his personal appearance and his counsel appears at the preliminary hearing on the date and time required, the

defendant's lack of personal appearance does not constitute a failure to appear''); *Fritz Hansen A/S v. Dist. Ct.*, 116 Nev. 650, 653, 6 P.3d 982, 983 (2000) (indicating that a party may make an appearance either in person or through his or her attorney).

Although Shinichi did not appear personally at the hearing, and as the district court properly denied as untimely his request for a continuance, a hearing on the merits was required, which did not occur here. At the hearing, the district court repeatedly stated that it was required to award Yoko all of the community property and any support that she requested, even though Yoko did not specifically plead for such relief in her complaint, and the court essentially foreclosed any meaningful cross-examination as to the support issues and whether an inequitable property award was justified. *See* NRS 125.150(1)(b) (directing that the district court ''[s]hall, to the extent practicable, make an equal disposition of the community property,'' except that it may dispose of the community property unequally, in such proportions as it deems just, upon finding a ''compelling reason to do so,'' provided it sets forth in writing its reasons for the unequal distribution). Instead, Yoko was awarded sole legal and physical custody of the children, with no visitation for Shinichi, all of the property, spousal and child support, and attorney fees and costs, despite a lack of evidence to support such requests and reasons to justify departing from the relief requested in the complaint. Accordingly, we reverse the district court's default judgment and remand this matter to the district court for a decision on the merits.[10]

## CONCLUSION

Under the provision of the UCCJEA governing subject matter jurisdiction, NRS 125A.305(1)(a), Nevada is the children's home state. Since the home state is given subject matter jurisdiction priority in custody matters, the Nevada district court had authority to render custody decisions. Thus, the district court properly determined that Nevada had subject matter jurisdiction to enter child custody orders in this matter.

With regard to the district court's order finding Nevada the children's place of habitual residence and ordering their immediate return to the U.S., the Hague Convention is not applicable in this

---

[10]In his brief, Shinichi asks that the matter be assigned to another department on remand, but he cites to neither the record nor any legal authority to support his request for remand to a different department. Thus, since he has not shown that assignment to a different department is necessary for the interest of justice, *see Wiese v. Granata*, 110 Nev. 1410, 1413 n.2, 887 P.2d 744, 746 n.2 (1994), or that the assigned department cannot fairly deal with the matters involved, *see Wickliffe v. Sunrise Hospital*, 104 Nev. 777, 783, 766 P.2d 1322, 1326-27 (1988), his request is denied.

case, since Japan has not signed the Hague Convention treaty, and its provisions therefore cannot be used to enforce the return of the children. The district court nevertheless properly entered the order in the context of the custody proceeding and its authority to decide custody matters under the UCCJEA.

As for the default divorce decree, because Shinichi filed responsive pleadings and appeared through his attorney, the district court erred by entering a default judgment against him. Since the district court did not decide the matter on its merits, we reverse the district court's decree to the extent that it awarded Yoko sole legal and physical custody of the children, with no visitation for Shinichi, all of the property, spousal and child support, and attorney fees and costs, and we remand this matter to the district court for further proceedings. On remand, the district court must hold a hearing on the merits and render its decision based on the evidence, taking into account statutory guidelines concerning custody, support, property distribution, and attorney fees and costs awards.