**An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF N. M., A MINOR CHILD, | No. 64694 |
| NAYELI M. G., Appellant, vs. GRAVIEL G., Respondent. | FILED APR 2 9 2015 |



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a district court order granting letters of guardianship over a minor child. Sixth Judicial District Court, Humboldt County; Richard Wagner, Judge.

Appellant, a Mexican citizen, gave birth to N.M. in California in 2007. Later that year, appellant and N.M. moved to Mexico. In 2008, appellant left N.M. in the care of N.M.'s maternal grandparents, who were also in Mexico. N.M.'s grandmother and two agents from Mexico's National System for Integral Family Development (DIF) executed a document stating that the grandparents had custody of N.M. (the 2008 DIF document).

In 2009 or 2010, N.M.'s maternal aunt (the Aunt) and respondent, her then-fiance or boyfriend, began caring for N.M. Respondent is a United States citizen. In August 2011, appellant signed a document purportedly giving the Aunt and respondent custody of N.M.

In September 2012, respondent moved N.M. to Nevada after his relationship with the Aunt ended. Appellant's half-sister then went to respondent's home at night and attempted to remove N.M. In response,

15-13012

respondent filed a verified emergency petition in November 2012 for appointment as N.M.'s temporary guardian. The district court appointed respondent as N.M.'s temporary emergency guardian.

In March 2013, respondent filed a petition to be appointed N.M.'s general guardian. After a two-day evidentiary hearing, at which multiple witnesses testified about the events described above and respondent's fitness to be N.M.'s guardian, the district court found that appellant had abandoned N.M. The district court appointed respondent as N.M.'s general guardian. Appellant then filed a notice of appeal and subsequently filed a motion to dismiss respondent's guardianship in which she raised several issues for the first time. The district court denied the motion.

We consider two issues that appellant raises on appeal: (1) whether the district court had jurisdiction to appoint a general guardian for N.M., and (2) whether there was sufficient evidence to support the district court's appointment of respondent as N.M.'s general guardian.[1]

_____

[1]We decline to address whether the district court erred or abused its discretion by not returning N.M. to appellant pursuant to the Hague Convention and by not referring N.M. for placement with a California child protective services agency because appellant waived these issues by not raising them in the district court before filing her notice of appeal. *Mack-Manley v. Manley*, 122 Nev. 849, 855, 138 P.3d 525, 529 (2006) (filing a proper notice of appeal divests the district court of jurisdiction); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (failure to properly raise a non-jurisdictional issue before the district court waives the issue on appeal). To the extent that appellant's Hague Convention argument contends that the district court lacked jurisdiction, it is without merit because "[state and federal] courts . . . have concurrent original jurisdiction" to hear Hague Convention claims. 22 U.S.C. § 9003(a) (2014).

*Standard of review*

We review de novo issues of subject matter jurisdiction. *Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009). We further review a district court's factual findings for an abuse of discretion and will uphold them if they are supported by substantial evidence. *Id.* at 668, 221 P.3d at 704. Substantial evidence is "evidence that a reasonable person may accept as adequate to sustain a judgment." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007).

*The district court had subject matter jurisdiction to appoint respondent as N.M.'s general guardian*

Appellant argues that the district court did not have jurisdiction to appoint respondent as N.M.'s general guardian because N.M. had not lived in Nevada for six months at the time respondent filed his first petition. Thus, we first consider whether the district court properly exercised temporary emergency jurisdiction before addressing whether it had jurisdiction to enter a general guardianship order in this case.

### *The district court properly exercised temporary emergency jurisdiction*

A district court may exercise temporary emergency jurisdiction to protect a child who is physically present in Nevada if "the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." NRS 125A.335(1).

Here, the parties do not dispute that N.M. was physically present in Nevada when the district court granted respondent's petition for a temporary guardianship. Although appellant argues that the district court lacked temporary emergency jurisdiction because there was no

evidence that N.M. was abused, mistreated, or neglected before moving to Nevada, this argument is without merit because N.M. faced a risk of harm while in Nevada. Since appellant's half-sister came to respondent's home at night and attempted to remove N.M., there was evidence to support the district court's finding that N.M. risked mistreatment. Therefore, we conclude that the district court did not abuse its discretion in exercising its temporary emergency jurisdiction.

*The district court had jurisdiction to appoint respondent as N.M.'s general guardian*

NRS 125A.335(2), which codifies section 204 of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), sets out three requirements for a district court that is exercising temporary emergency jurisdiction to enter a final order: (1) no court in another jurisdiction has entered an applicable custody order or commenced custody proceedings, (2) the district court's order provides that it is to be a final determination, and (3) Nevada has become the child's home state. *See also* UCCJEA § 204 (1997), 9 U.L.A. 676-77 (1999).

The third requirement sets forth a time-of-residency-in-Nevada requirement and does not provide that a district court exercising temporary emergency jurisdiction can make Nevada the child's home state by issuing an order. *See* UCCJEA § 204 cmt., 9 U.L.A. 677 (stating that "an emergency custody determination made under this section becomes a final determination, if it so provides, *when the State that issues the order becomes the home State of the child*" (emphasis added)); *see also* NRS 125A.085(1) (setting out the time requirement for home state status). Our interpretation of this provision of NRS 125A.335(2) is consistent with other jurisdictions' interpretations of their statutes codifying UCCJEA § 204. *See, e.g., Hensley v. Kanizai*, 143 So. 3d 186, 195 (Ala. Civ. App.

2013) (observing that a custody determination made by a trial court exercising temporary emergency jurisdiction can become final "only if the state becomes the home state of the child"); *In re E.D.*, 812 N.W.2d 712, 721 (Iowa Ct. App. 2012) (holding that a trial court exercising temporary emergency jurisdiction cannot issue an order making Iowa a child's home state because such an order would conflict with the UCCJEA's definition of home state); *In re J.C.B.*, 209 S.W.3d 821, 823 (Tex. App. 2006) (observing that Texas must become a child's home state before a custody determination made by a trial court exercising temporary emergency jurisdiction can become final). Thus, in the absence of custody proceedings or a controlling custody order in another state, a Nevada court exercising temporary emergency jurisdiction may make a custody determination that becomes final once the child lives in Nevada for enough time to make Nevada the child's home state.[2]

A child's home state is "[t]he state in which [the] child lived with a parent or a person acting as a parent for at least 6 consecutive months, including any temporary absence from the state, immediately before the commencement of a child custody proceeding." NRS

---

[2]The cases that appellant relies on to limit the district court's jurisdiction under NRS 125A.335 are inapposite because, unlike the present case, they involve existing child custody orders. *See, e.g., McDow v. McDow*, 908 P.2d 1049, 1051 (Alaska 1996) (limiting a court's temporary emergency jurisdiction when a child is subject to an existing custody order from another jurisdiction); *In re Appeal in Pima Cnty. Juvenile Action No. J-78632*, 711 P.2d 1200, 1206-07 (Ariz. Ct. App. 1985) (same), *approved in part and vacated in part on other grounds*, 712 P.2d 431, 435 (Ariz. 1986); *Perez v. Tanner*, 965 S.W.2d 90, 94 (Ark. 1998) (same); *In re Joseph D.*, 23 Cal. Rptr. 2d 574, 582 (Ct. App. 1993) (same), *superseded by statute as stated in In re C.T.*, 121 Cal. Rptr. 2d 897, 904 n.4 (Ct. App. 2002); *State ex rel. D.S.K.*, 792 P.2d 118, 127-28 (Utah Ct. App. 1990) (same).

125A.085(1). A child custody proceeding is one that relates to the present custody dispute and not to any prior dispute between the parties. *Friedman v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 264 P.3d 1161, 1166 (2011). A proceeding commences when its first pleading is filed. NRS 125A.065.

Here, the present custody proceeding commenced over six months after N.M. began residing in Nevada. Thus, Nevada became N.M.'s home state by the time respondent petitioned to be appointed as her general guardian. *See* NRS 125A.085. In addition, the record does not show that a child custody order had been entered or that a child custody proceeding had been initiated in another jurisdiction before the district court appointed respondent as N.M.'s general guardian. Therefore, we conclude that the district court was authorized to enter an order granting a general guardianship.

*The district court did not abuse its discretion in granting a general guardianship to respondent*

Appellant argues that the district court abused its discretion by awarding guardianship of N.M. to respondent because there was not sufficient evidence to overcome the parental preference presumption.[3] This presumption provides that "[t]he parents of a minor, or either parent, if qualified and suitable, are preferred over all others for appointment as guardian for the minor." NRS 159.061(1). "If, however, neither parent is qualified and suitable, or if both parents are, the statute requires the court

---

[3]Appellant does not argue on appeal that the district court abused its discretion by determining that N.M.'s best interests would be served by appointing respondent as N.M.'s general guardian. Therefore, appellant waives this issue on appeal. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. ___, ___ n.3, 252 P.3d 668, 672 n.3 (2011).

to move to the second step, determination of who is most suitable." *In re Guardianship of D.R.G.*, 119 Nev. 32, 38, 62 P.3d 1127, 1130-31 (2003).

When determining whether a parent is qualified and suitable, the district court must give "the child's basic needs [and] welfare" priority over the parent's interest in custody. *Id.* at 38, 62 P.3d at 1131. Thus, the parental preference presumption can be "overcome either by a showing that the parent is unfit or other extraordinary circumstances." *Litz v. Bennum*, 111 Nev. 35, 38, 888 P.2d 438, 440 (1995).

One extraordinary circumstance that can overcome the parental preference presumption is the "'abandonment or persistent neglect of the child by the parent.'" *In re D.R.G.*, 119 Nev. at 38, 62 P.3d at 1131 (quoting *Locklin v. Duka*, 112 Nev. 1489, 1496, 929 P.2d 930, 934 (1996)). "'Abandonment of a child' means any conduct of one or both parents of a child which evinces a settled purpose on the part of one or both parents to forego all parental custody and relinquish all claims to the child." NRS 128.012(1).

"Intent is the decisive factor in abandonment and may be shown by the facts and circumstances." *In re Parental Rights as to Montgomery*, 112 Nev. 719, 727, 917 P.2d 949, 955 (1996), *superseded by statute on other grounds as stated in In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 798-99, 8 P.3d 126, 132 (2000). "If a parent or parents of a child leave the child in the care and custody of another without provision for the child's support and without communication for a period of 6 months, . . . the parent or parents are presumed to have intended to abandon the child." NRS 128.012(2). To overcome this presumption, the parent must demonstrate that he or she did not abandon the child. *See In re N.J.*, 116 Nev. at 803, 8 P.3d at 134.

In finding that appellant abandoned N.M., the district court relied on a Mexican attorney's letter purportedly opining that the 2008 DIF document stated that appellant abandoned N.M. in 2008.[4] The district court also considered a 2011 document signed by appellant that purportedly granted respondent and the Aunt custody over N.M. Finally, respondent testified that appellant expressed a desire to relinquish custody of N.M. when she executed the 2011 document that purportedly gave custody to respondent and the Aunt. Thus, there was evidence to support the district court's finding that appellant intended to abandon N.M.

Furthermore, the evidence in the record demonstrates that respondent and the Aunt began caring for N.M. in 2009 or 2010. The record does not show that appellant attempted to exercise custody of N.M. or to provide for her after respondent and the Aunt began caring for her. Nor does it show that appellant attempted to communicate with N.M. while respondent and the Aunt cared for her or attempted to regain custody before N.M. moved to Nevada.

The evidence submitted in this case shows that the DIF concluded that appellant abandoned N.M. in 2008 and appellant ceased to care for N.M., and no admitted evidence shows that appellant provided support for N.M. or communicated with her for at least six months. Accordingly, there was substantial evidence to support the district court's

---

[4]The only record of the letter's contents is the oral translation that the court interpreters provided. Because the actual letter was omitted from the appellate record, we must presume that it supports the district court's findings about its content. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007).

finding that appellant abandoned N.M. *Ellis*, 123 Nev. at 149, 161 P.3d at 242. Thus, the district court did not abuse its discretion by finding that appellant's abandonment of N.M. overcame the parental preference presumption. *See Litz*, 111 Nev. at 38, 888 P.2d at 440. Therefore, we conclude that the district court did not abuse its discretion in appointing respondent as N.M.'s general guardian.

*Conclusion*

The record does not show that a custody proceeding was initiated or that a controlling custody order was entered in another jurisdiction before or during the district court's exercise of its temporary emergency jurisdiction. Furthermore, N.M. lived in Nevada for six months before general guardianship proceedings commenced. Thus, the district court had jurisdiction to appoint a general guardian. When exercising this jurisdiction, the district court did not abuse its discretion by appointing respondent as N.M.'s general guardian because substantial evidence supports its finding that appellant abandoned N.M.[5] Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

---

[5]We have considered the parties' remaining arguments and conclude that they are without merit.

cc: Hon. Richard Wagner, District Judge
Carolyn Worrell, Settlement Judge
Richard F. Cornell
Dolan Law, LLC
Humboldt County Clerk