MABLE HUDSON, NKA MABLE BROWN, Appellant, *v.* MILTON JONES, Respondent.

No. 43828

July 13, 2006                                        138 P.3d 429

*Bruce I. Shapiro*, Henderson; *Santoro, Driggs, Walch, Kearney, Johnson & Thompson* and *Nicholas J. Santoro*, Las Vegas, for Appellant.

*Phung H. Jefferson*, Las Vegas, for Respondent.

*Woodburn & Wedge* and *Randy A. Drake*, Reno, for Amicus Curiae State Bar of Nevada, Family Law Section.

---

[8]381 F.3d 1219, 1226 (10th Cir. 2004) (quoting *Butler v. McKellar*, 494 U.S. 407, 412 (1990)), *cert. denied*, 543 U.S. 1079 (2005).

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we decide whether the district court erred when it applied the parental preference doctrine to grant the biological father's motion to modify the child custody arrangement between the father and the custodial maternal grandmother. We conclude that when a district court grants a nonparent joint legal and primary physical custody of a child, the parental preference doctrine does not apply to subsequent motions to modify custody. Instead, a parent seeking to modify custody must show that the circumstances of either the parent or nonparent have been materially altered and that the child's welfare would be substantially enhanced by the change in custody. Accordingly, we reverse the district court's order and remand the matter to the district court for further proceedings.

### FACTS

Appellant Mable Hudson is the maternal grandmother of M.J., a minor child who is now age 14. Respondent Milton Jones is M.J.'s biological father. In 1993, when M.J. was about one year old, M.J.'s mother died from gunshot wounds sustained in a drive-by shooting. Milton sustained gunshot wounds to the head and had to be hospitalized. M.J. suffered minor injuries from flying glass. The investigation into the attack revealed that a rival gang was likely retaliating against Milton.

Mable moved the district court for custody of M.J. The district court, after determining that Milton was an unfit parent and that sufficient extraordinary circumstances existed to overcome the parental preference, awarded Mable and Milton joint legal custody of M.J., with Mable having primary physical custody of the child and Milton having visitation.

Approximately ten years later, Milton filed a motion to modify the district court's custody order and requested sole legal and physical custody of M.J. Milton argued that although his unsafe and destructive lifestyle justified the initial award of physical custody to Mable, he had consciously changed his lifestyle and was currently living a productive, law-abiding life with his new wife. Mable opposed Milton's motion, arguing that Milton was not a fit parent and that sufficient, extraordinary circumstances existed to overcome any parental preference Milton might have. The district court interviewed M.J., who repeatedly expressed her desire to live with her father.

In its findings of fact, conclusions of law and judgment, the district court found that Milton had turned his life around and that he was now a productive member of society. After stating that it was bound to apply the parental preference presumption to the case, the district court granted Milton's motion and restored sole legal and physical custody of M.J. to her father. Mable filed this timely appeal.

## DISCUSSION

In determining the custody of a minor child, "the sole consideration of the court is the best interest of the child."[1] According to NRS 125.480(3), unless the child's best interest requires otherwise, the district court shall award custody in the following order of preference:

> (a) To both parents jointly pursuant to NRS 125.490 or to either parent. If the court does not enter an order awarding joint custody of a child after either parent has applied for joint custody, the court shall state in its decision the reason for its denial of the parent's application.
>
> (b) To a person or persons in whose home the child has been living and where the child has had a wholesome and stable environment.
>
> (c) To any person related within the third degree of consanguinity to the child whom the court finds suitable and able to provide proper care and guidance for the child, regardless of whether the relative resides within this State.

---

[1]NRS 125.480(1).

    (d) To any other person or persons whom the court finds suitable and able to provide proper care and guidance for the child.

Further, Nevada's guardianship statute provides that the parents or either parent of a minor child, "if qualified and suitable, are preferred over all others for appointment as guardian for the minor."[2] Interpreting the former version of these two statutes, we have concluded that they create "a rebuttable presumption that a fit parent is to be preferred over nonparents with respect to child custody."[3] We have also stated that "[t]he best interest of the child is usually served by awarding his custody to a fit parent."[4] The so-called parental preference doctrine recognizes that a parent has a constitutionally protected liberty interest in the care, custody, and control of his or her child.[5] Based upon this liberty interest, NRS 125.500(1) requires that the court "make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child" before the district court awards custody to a nonparent without the consent of the parents.

If the court awards joint custody to the parents, the arrangement may be modified upon "the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires the modification or termination."[6] We also held, in *Murphy v. Murphy*, that as between two fit parents, the moving parent bears the burden of proving that a change of custody is warranted by establishing that "(1) the circumstances of the parents have been materially altered; and (2) the child's welfare would be substantially enhanced by the change."[7] We conclude that the two-prong analysis enunciated in *Murphy* also governs a custody modification between a parent and a nonparent.

*The parental preference does not apply to parent-nonparent custody modifications*

    We have addressed the application of the parental preference in previous decisions in which a natural parent sought to terminate a nonparent's guardianship over her child. In *Litz v. Bennum*, the mother signed a consent form naming her parents temporary

---

[2]NRS 159.061(1).

[3]*McGlone v. McGlone*, 86 Nev. 14, 16-17, 464 P.2d 27, 29 (1970) (interpreting the former best interests statute, NRS 125.140(1), and the former guardianship preference statute, NRS 159.050(1)).

[4]*Id.* at 17, 464 P.2d at 29.

[5]*See Rico v. Rodriguez*, 121 Nev. 695, 704, 120 P.3d 812, 818 (2005).

[6]NRS 125.510(2).

[7]84 Nev. 710, 711, 447 P.2d 664, 665 (1968).

guardians of her child after she was arrested for a probation violation.[8] After leaving prison, the mother remarried and gave birth to another child. Several years later, she sought reunification and dissolution of her parents' guardianship over her first child. We concluded that because the mother was a fit parent and played an active role in her child's life, her parents' custody of her child for an extended period of time "[did] not amount to an extraordinary circumstance that could overcome the parental preference doctrine."[9]

Next, in *Locklin v. Duka*, we elaborated on *Litz* to establish a number of factors that would constitute extraordinary circumstances sufficient to rebut the parental preference.[10] In *Locklin*, a California court appointed the grandparents as the child's guardians, and the mother testified that she did not object to the guardianship because she was addicted to drugs and not capable of properly caring for her child. Seven years later, the mother petitioned a Nevada district court to dissolve the guardianship. The district court, finding that the mother was a fit parent and that no extraordinary circumstances existed to overcome the parental preference, terminated the guardianship and restored custody of the child to the mother.[11] We affirmed.

The situation in this case can be distinguished from our decisions in *Litz* and *Locklin*. The parents in those cases voluntarily relinquished custody of their child to a nonparent and assumed that the custody arrangement was temporary. "The theory in continuing the parental preference after a voluntary placement is that courts should encourage parents to seek help if and when necessary."[12] As we noted in *Litz*, we do "not want to discourage parents from willingly granting temporary guardianships, while working through problems in their own lives, if that is in the child's best interest."[13] The natural parent, by voluntarily establishing the guardianship, does not waive their right to the parental preference at a subsequent proceeding to reevaluate the custody arrangement.[14] As a result, when the mother in each case sought to terminate the guardianship, the district court properly applied the parental preference.

[8]111 Nev. 35, 36, 888 P.2d 438, 439 (1995).

[9]*Id.* at 38, 888 P.2d at 440-41.

[10]112 Nev. 1489, 1495-96, 929 P.2d 930, 934-35 (1996).

[11]*Id.* at 1491-93, 929 P.2d at 933.

[12]*Guinta v. Doxtator*, 794 N.Y.S.2d 516, 520 (App. Div. 2005).

[13]111 Nev. at 38, 888 P.2d at 440.

[14]*See, e.g., Diaz v. Morales*, 51 S.W.3d 451, 454 (Ky. 2001) ("A waiver of the parent's superior right to custody requires statements and circumstances

In contrast, a parent who seeks to modify custody in cases involving a litigated custody dispute and a prior determination of either parental unfitness or extraordinary circumstances justifying the award of custody to a nonparent is no longer entitled to the parental preference. The Alaska Supreme Court determined, in *C.R.B. v. C.C.*, that a parent who moves to modify a nonparent's permanent custody cannot rely on parental preference and instead must show as substantial a change in circumstances as in a parent-parent case.[15] The Alaska court noted that two policies in child custody law collide in this situation: "the law's preference for parental over nonparental custody, and the law's desire to meet children's needs for stability by requiring a substantial change in circumstances before modifying custody."[16] Although the parental preference is "a vital safeguard [in initial custody determinations] against enabling nonparents to convince courts to *remove* children improperly from their parents," applying the parental preference to modifications would only "weaken the substantial change requirement."[17]

We agree with the reasoning of the Alaska Supreme Court and conclude that the parental preference does not apply to custody modifications between a parent and nonparent. Here, Milton did not seek to establish a guardianship for M.J., nor did he agree to Mable's request for legal custody. When the district court first granted Mable legal and physical custody of M.J. in 1993, it found that Milton was an unfit parent and that sufficient extraordinary circumstances existed to overcome the parental preference. Therefore, Mable successfully rebutted the presumption that Milton was entitled to custody. Because the district court previously found extraordinary circumstances and awarded joint custody to the parties, it could not revisit the issue of extraordinary circumstances, find that they no longer exist, and award custody of the child to the parent as a matter of right without consideration of the child's best interest.[18] Rather, the proper analysis is the two-factor test from *Murphy*.

---

equivalent to an express waiver."); *Gordon v. Gordon*, 603 S.E.2d 732, 733 (Ga. Ct. App. 2004) (" 'Parental rights are not permanently relinquished by a guardianship that is intended to be temporary and represented to be temporary in nature.' " (quoting *Uniroyal Goodrich Tire Co. v. Adams*, 472 S.E.2d 518 (Ga. Ct. App. 1996))).

[15]959 P.2d 375, 379 (Alaska 1998), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078 (Alaska 2004).

[16]*Id.*

[17]*Id.* at 380.

[18]*See Guinta*, 794 N.Y.S.2d at 521.

Although amicus curiae, the Family Law Section of the Nevada State Bar, agrees that the *Murphy* analysis applies to custody modifications between a parent and nonparent, it suggests that the district court should still apply a type of parental preference in order to adequately protect a parent's fundamental liberty interest in raising his or her child, while at the same time protecting the child's interest in stability in his or her living arrangements. The Family Law Section therefore urges this court to adopt a burden-shifting approach that merges what it deems the parental preference of NRS 125.480(3) with the *Murphy* modification analysis. The Family Law Section suggests that a showing of fitness by the natural parent would satisfy the first prong of *Murphy* and shift the burden to the nonparent to establish that the best interest of the child requires that the nonparent continue to have custody.

We recognize that this case involves the subtle interplay between a parent's constitutional right to custody and a child's best interest. However, as emphasized by the Alaska Supreme Court, "[h]aving once protected the parent's right to custody, at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability in its care and living arrangements by modifying those arrangements more readily than in a parent-parent case."[19] We therefore decline to adopt the proposed burden-shifting approach.

## CONCLUSION

We conclude that the parental preference applies only to initial custody orders, and not to custody modifications, between a parent and nonparent. In order to modify an order granting custody to a nonparent, the district court must find that one of the party's circumstances has materially changed and that a change in custody would substantially enhance the child's welfare. Therefore, the district court erred when it restored custody of M.J. to Milton after applying the parental preference instead of the two-part custody modification analysis. Accordingly, we reverse the district court's order and remand for further proceedings consistent with this opinion.

ROSE, C. J., BECKER, MAUPIN, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[19]*C.R.B.*, 959 P.2d at 380; *see also Sheppard v. Hood*, 605 So. 2d 708, 712 (La. Ct. App. 1992) (reasoning that "a parent seeking custody of a child awarded to a non-parent by an earlier considered decree bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by the advantages a change affords to the child").