AUDREY RENNELS, Appellant, v. ROGER
RENNELS and JENNIFER RENNELS, Respondents.

No. 53872

August 4, 2011                                    257 P.3d 396

[Rehearing denied September 13, 2011]
[En banc reconsideration denied November 15, 2011]

*Hutchison & Steffen, LLC*, and *Michael K. Wall*, Las Vegas, for
Appellant.

*Law Office of Daniel Marks* and *Daniel Marks*, Las Vegas, for
Respondents.

Before SAITTA, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, HARDESTY, J.:

Grandparents and other nonparents are typically not entitled to visitation with a minor child as a matter of right because there is a recognized presumption that a parent's desire to deny visitation is in the best interest of the child. However, pursuant to NRS 125C.050, a grandparent or other nonparent may be granted judicially approved visitation rights in some instances. The first issue presented in this appeal is whether the stipulated visitation order between a parent and a grandmother was a final decree entitled to res judicata protections. We conclude that it was, so we must next examine whether the parental presumption continues to apply when a parent seeks to modify or terminate a nonparent's judicially approved visitation rights with a minor child. We conclude that the parental presumption applies at the time of the court's initial determination of a nonparent's visitation rights. However, when, as in this case, a parent seeks to modify or terminate the judicially approved visitation rights of a nonparent, the parental presumption is no longer controlling.

In so concluding, we adopt the two-prong test enunciated in *Ellis v. Carucci*, 123 Nev. 145, 150, 161 P.3d 239, 242 (2007), in circumstances where a party seeks to modify or terminate a nonparent's judicially approved visitation rights with a minor child, and we now hold that modification or termination of a nonparent's judicially approved visitation rights is only warranted upon a showing of a substantial change in circumstances that affects a child's welfare such that it is in the child's best interest to modify the existing visitation arrangement. *Id.* Applying the test to this case, we conclude that the district court failed to articulate any substantial change in circumstances before it terminated appellant's nonparent visitation rights with her granddaughter and, therefore, it is not in the best interests of the child to terminate visitation. Thus, we reverse.

## FACTS

Respondent Roger Rennels and Martha Contreras were married in 1994 and had a child, Martina, in 1999. In 2001, the couple divorced, and Roger received sole custody of Martina. Approximately two months after Roger and Martha divorced, Roger and Martina resided with Roger's mother, appellant Audrey Rennels, in northern California. They lived with Audrey for five months, during which time Martina and Audrey enjoyed a close relationship. After living with Audrey, Roger and Martina moved to Texas. Martina and Audrey remained close after the move. Audrey also visited Roger and Martina in Texas several times, and Martina visited Audrey for several weeks in 2002. In July 2003, Roger and Martina moved to Las Vegas. Thereafter, Roger married his current wife, respondent Jennifer Rennels, and Jennifer adopted Martina in June 2006.

According to Audrey, Roger disapproved of the frequent contact between Martina and Audrey, and he stopped allowing Martina to see Audrey in June 2004. In response, Audrey sought court-ordered nonparental visitation pursuant to NRS 125C.050, which allows a nonparent to seek visitation rights. Roger opposed Audrey's petition and also filed a motion to dismiss or for summary judgment.

The district court conducted a hearing in December 2005 and denied the motion to dismiss, noting that an evidentiary hearing was required because there is a rebuttable presumption that granting nonparental visitation over a parent's objection is not in the child's best interest. Before the evidentiary hearing occurred, however, the parties reached a settlement of the visitation issues. Pursuant to this settlement, the parties prepared and submitted to the court a stipulation and order in which they agreed that "all pending issues" between them were resolved and specified a detailed visitation schedule for Audrey. The district court approved the stipulation and issued a visitation order effecting its provisions.

The visitation order included the appointment of a guardian ad litem and allowed Audrey to have four supervised visits with Martina per year. The guardian ad litem was instructed to select a psychologist, and Audrey, Roger, and Martina were required to undergo counseling with the selected psychologist. The supervised visitation requirement was to be reviewed every six months by the guardian ad litem and the psychologist to determine whether supervision was still necessary. Under the visitation order, if the guardian ad litem and the psychologist concluded that Audrey could have unsupervised visits, Roger would abide by that determination. The order also provided that, before involving the dis-

trict court again, the parties would attempt to mediate any visitation disputes with the guardian ad litem.

The parties apparently followed the visitation order until 2008. During this time, the psychologist, Dr. John Paglini, gave generally favorable reports regarding Audrey and Martina's visits, and he ultimately recommended unsupervised visitation. However, Roger refused to allow unsupervised visits. In December 2008, three months after Dr. Paglini recommended unsupervised visits, Audrey filed a motion to compel Roger to comply with the visitation order. In her motion, Audrey asserted that she was entitled to unsupervised visits based on the visitation order and Dr. Paglini's recommendation. Roger and Jennifer opposed Audrey's motion and, concurrently, filed a countermotion to terminate Audrey's visitation rights altogether. They argued that the district court failed to comply with *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion), which held that parents have a due process right to make child rearing decisions, and this creates a presumption that a parent's wishes are in the best interests of the child. *Id.* at 69-70. In reply, Audrey argued that the district court complied with *Troxel*, and that the parties stipulated to a visitation schedule. She further contended that the stipulated visitation order was a final judgment and therefore res judicata principles applied.

After hearing the parties' arguments on the motions, the district court denied Audrey's motion to compel Roger's compliance with the stipulated visitation order and terminated her visitation rights. The district court reasoned, in relevant part, that: (1) Audrey had no fundamental rights to visitation in light of the presumption that fit parents act in the best interest of the child, even with a prior visitation order in place; (2) acrimony between the parties had increased; and (3) continued visitation was not in Martina's best interest. This appeal followed.

## DISCUSSION

In resolving this appeal, we must first determine whether the stipulated visitation order is a final order that precluded relitigation of Audrey's right to visitation with Martina. We then consider the proper standard for determining whether modification or termination of Audrey's judicially approved nonparental visitation rights was warranted.

### Standard of review

Generally, "[t]his court reviews the district court's decisions regarding custody, including visitation schedules, for an abuse of dis-

cretion," *Rivero v. Rivero*, 125 Nev. 410, 428, 216 P.3d 213, 226 (2009), because child custody matters rest in the trial court's sound discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). The district court's factual findings will not be set aside if supported by substantial evidence. *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007). However, "we will review a purely legal question . . . de novo." *Waldman v. Maini*, 124 Nev. 1121, 1128, 195 P.3d 850, 855 (2008). Determining whether a stipulated visitation order is final is a question of law subject to de novo review.

### *The stipulated visitation order was final*

There is strong public policy favoring the prompt agreement and resolution of matters related to the custody, care, and visitation of minor children. *See Rivero*, 125 Nev. at 429, 216 P.3d at 226-27 (recognizing that parties are free to contract regarding child custody and such agreements are generally enforceable); *Ellis*, 123 Nev. at 151, 161 P.3d at 243 (same). Therefore, we encourage voluntary resolution of these matters, and we will generally recognize the preclusive effect of such agreements if they are deemed final.[1] *See Castle v. Simmons*, 120 Nev. 98, 105, 86 P.3d 1042, 1047 (2004) (explaining that the "changed circumstances" factor, which is required to modify a primary physical custody arrangement, is based on res judicata principles); *see also Hopper v. Hopper*, 113 Nev. 1138, 1143-44, 946 P.2d 171, 174-75 (1997); *Mosley v. Figliuzzi*, 113 Nev. 51, 58, 930 P.2d 1110, 1114 (1997).

An order is final if it "disposes of the issues presented in the case . . . and leaves nothing for the future consideration of the court." *Valley Bank of Nevada v. Ginsburg*, 110 Nev. 440, 445, 874 P.2d 729, 733 (1994) (alteration in original) (internal quotations omitted). Finality is determined based on what the order "actually *does*, not what it is called." *Id.* In the family law context, the California Supreme Court has held that a "stipulated custody order is a final judicial custody determination . . . if there is a clear, affirmative indication the parties intended such a result." *Montenegro v. Diaz*, 27 P.3d 289, 295 (Cal. 2001). It is irrelevant whether the order is the result of a stipulated agreement between the parties that is later judicially approved or it is achieved through

---

[1]We recognize an exception to this rule when the moving party seeks to introduce evidence of domestic violence of which it was unaware at the time of the original custody decree. *Castle v. Simmons*, 120 Nev. 98, 105, 86 P.3d 1042, 1047 (2004). However, domestic violence is not at issue in this case.

litigation. *Id.* at 294. Instead, the relevant inquiry is whether the order fully resolved the issues between the parties.

Once a final judgment is entered in a nonparental visitation matter, whether in a contested hearing or by stipulation, it has a preclusive effect on later litigation. *Ingram v. Knippers*, 72 P.3d 17, 22 (Okla. 2003) ("A consent judgment is entitled to the same preclusive treatment as a contested judgment."). This serves to prevent parties from relitigating the same issues. *Id.*; *accord Rivero*, 125 Nev. at 431, 216 P.3d at 228; *Ellis*, 123 Nev. at 151, 161 P.3d at 243; *Castle*, 120 Nev. at 105, 86 P.3d at 1047; *Hopper*, 113 Nev. at 1143-44, 946 P.2d at 174-75; *Mosley*, 113 Nev. at 58, 930 P.2d at 114.

Audrey's and Roger's actions, along with the specific language in the order, clearly demonstrate that they intended the stipulated visitation order to be final with regard to Audrey's visitation with Martina. The document signed by the parties and approved by the district court shows that the parties intended to resolve their visitation dispute through the order. For example, the parties introduced the terms of the stipulation by stating that "this matter, as well as all pending issues, shall be resolved with the following stipulations and agreements." The order memorializes the parties' agreement, sets forth the specific parameters for Audrey's visitation with Martina, and provides for modification of the visitation arrangements with the approval of the guardian ad litem and Dr. Paglini.

There is no indication that the parties intended the stipulated visitation order to be anything other than a final judgment, and neither party challenged the order for over two years. The parties also expressly intended to avoid further involvement with the district court as they stipulated to mediate any future disputes with the guardian ad litem. Only if they were unable to resolve the dispute through mediation with the guardian ad litem would the matter come back to the district court. Furthermore, as part of their stipulation, the parties vacated the evidentiary hearing that had been scheduled to resolve Audrey's visitation rights. Therefore, we conclude that the stipulated visitation order is a final judgment.

Because the stipulated visitation order in this case is a final judgment, it precludes relitigation of Audrey's right to visitation with Martina based on the same set of facts the district court already considered. Thus, we must next determine under what circumstances a nonparent's judicially approved visitation rights can be modified or terminated.[2] Specifically, we examine whether par-

---

[2]Roger maintains that there are differences between the nonparent visitation rights of grandparents and those of nongrandparents who have established a meaningful relationship with the child. However, all nonparents are similarly

ents are entitled to the continued presumption that their desire to restrict visitation with a nonparent is in the best interest of the child when they seek to modify or terminate the judicially approved visitation rights of a nonparent. We conclude that parents are not entitled to this presumption when they seek to modify or terminate a judicially approved visitation arrangement, and we adopt the two-prong test from *Ellis* for assessing whether modifying or terminating court-ordered visitation is appropriate. 123 Nev. at 150, 161 P.3d at 242.

## *The parental presumption*

The United States Supreme Court has long recognized that "there is a presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U.S. 57, 68 (2000) (plurality opinion). Therefore, when a nonparent requests visitation with a child, courts "must accord at least some special weight" to the fit parents' wishes. *Id.* at 70. Nevada's nonparent visitation statute also provides such deference to the parent, providing that after a parent has "denied or unreasonably restricted visits with the child, there is a rebuttable presumption that the [nonparent's] right to visitation . . . is not in the best interests of the child." NRS 125C.050(4). NRS 125C.050(6) lists the threshold requirements for overcoming this presumption. The statute is silent on whether the same presumption applies when a parent seeks to modify or terminate visitation rights that the district court previously granted to a nonparent, but this court has previously determined that parents do not get the benefit of the presumption when nonparents obtain court-ordered custody of a child. *See Hudson v. Jones*, 122 Nev. 708, 713, 138 P.3d 429, 432 (2006). We now extend this holding to judicially approved nonparent visitation arrangements.

In *Hudson*, a grandmother obtained joint legal and primary physical custody of her grandchild after the child's mother was killed in a drive-by shooting related to the father's gang involvement. *Id.* at 709-10, 138 P.3d at 430. The court determined that the father was "an unfit parent and that sufficient extraordinary circumstances existed to overcome the parental preference." *Id.* at 710, 138 P.3d at 430. Ten years later, the father sought to modify the district court's order granting custody to the grandmother, contending that he had turned his life around and was fit to be a parent to his child. *Id.* The district court found that the father had

situated regarding custody and/or visitation because Nevada does not distinguish grandparents from other nonparents. *See* NRS 125C.050(2) (allowing any nonparent with whom a child has resided and has established a meaningful relationship to petition for reasonable visitation with the child).

indeed significantly changed his lifestyle. *Id.* Thus, the district court felt "bound to apply the parental preference presumption," and it granted the father's request to modify the custody arrangement with the child so that he would have sole legal and physical custody. *Id.*

We reversed the district court, holding that the parental presumption does not apply to a previously "litigated custody dispute" because "applying the parental preference to modifications would only 'weaken the substantial change requirement.' "[3] *Id.* at 713, 138 P.3d at 432 (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 380 (Alaska 1998), *disagreed with on other grounds as stated in Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004)). We recognized that when there is a court-ordered custody arrangement, the nonparent has effectively rebutted the parental presumption, after which the child's need for stability becomes a paramount concern. *Id.* at 713-14, 138 P.3d at 432-33. Thus, we concluded that the same test should apply to requests to modify court-ordered parent-nonparent custody arrangements as to proposed modifications to parent-parent arrangements. *Id.* at 713, 138 P.3d at 432.

We are persuaded that this rationale also applies to requests to modify or terminate judicially approved nonparent visitation.[4] When a nonparent obtains visitation through a court order or judicial approval, the nonparent has successfully overcome the parental presumption and is in the same position as a parent seeking to modify or terminate visitation. Declining to apply the parental presumption once the court has approved nonparental visitation not only gives deference to a court's order, but it also promotes the important policy goal of stability for the child. *Ellis*, 123 Nev. at 151, 161 P.3d at 243 (recognizing that stability is an important concern in making custody and visitation determinations); *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000) (stating that "modification suits raise additional policy concerns such as stability for the child and the need to prevent constant litigation in child custody cases"). If parents can unilaterally modify or terminate visitation with nonparents, with whom a child has had an ongoing relationship, and which exists because the court has adjudicated and approved a visitation schedule, the order would serve no legal or policy purpose. Thus, we adopt the test we enunciated in *Ellis* for modifying custody arrangements among parents and apply it to

---

[3]However, we held that the parental presumption continued to apply to temporary nonparent custody situations, such as temporary guardianships. *Hudson v. Jones*, 122 Nev. 708, 711-12, 138 P.3d 429, 431-32 (2006).

[4]Pursuant to NRS 125A.045, child custody determinations include visitation and modifications of visitation.

modifying or terminating judicially approved nonparent visitation rights. In *Ellis*, we concluded that ''modification of primary physical custody is warranted only when (1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the child's best interest is served by the modification.'' 123 Nev. at 150, 161 P.3d at 242. In applying this test, the district court should evaluate the two prongs without regard to the parental preference.[5]

### The Ellis test

#### Substantial change in circumstances affecting the welfare of the child

The requirement that a party requesting modification or termination of a judicially approved visitation arrangement demonstrate a substantial change in circumstances affecting the welfare of the child '' 'is based on the principle of res judicata' and 'prevents ''persons dissatisfied with custody decrees [from filing] immediate, repetitive, serial motions until the right circumstances or the right judge allows them to achieve a different result, based on essentially the same facts.'' ' '' *Ellis*, 123 Nev. at 151, 161 P.3d at 243 (alteration in original) (quoting *Castle v. Simmons*, 120 Nev. 98, 103-04, 86 P.3d 1042, 1046 (2004) (quoting *Mosley v. Figliuzzi*, 113 Nev. 51, 58, 930 P.2d 1110, 1114 (1997))). In assessing whether circumstances have sufficiently changed to modify visitation, ''courts should not take the [analysis of this] prong lightly.'' *Id.*

---

[5]Other jurisdictions generally agree that *Troxel*'s parental presumption applies to the initial determination regarding visitation but not to a request to modify or terminate that agreement. In *Albert v. Ramirez*, the Court of Appeals of Virginia held that a ''judicially sanctioned consent decree'' setting forth custody and visitation for a nonparent gave the nonparent rights that are not subject to the *Troxel* parental best interest presumption. 613 S.E.2d 865, 869-70 (Va. Ct. App. 2005). Therefore, a parent who wishes to change or terminate a judicially approved agreement must first demonstrate a material change in circumstances. *Id.* at 870. To hold otherwise, the court noted, ''would render all such custody decrees void and unenforceable.'' *Id.* at 869-70. Similarly, the Court of Appeals of New Mexico held that ''*Troxel* does not shift the burden [of establishing cause] away from a parent who seeks to modify an existing order granting grandparent visitation.'' *Deem v. Lobato*, 96 P.3d 1186, 1191 (N.M. Ct. App. 2004); *see also Ingram v. Knippers*, 72 P.3d 17, 22 (Okla. 2003) (''While a fit parent contesting grandparental visitation is entitled to a presumption that the parent will act in the best interest of the child, . . . a court will not modify a valid visitation order without the moving party first showing a substantial change of circumstances.'' (internal citation omitted)); *In Interest of Ferguson*, 927 S.W.2d 766, 768 (Tex. App. 1996) ('' '[W]hatever effect [the parental] presumption may have in an original custody action, it cannot control a suit to change custody.' '' (quoting *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955))).

While we do not address what constitutes changed circumstances sufficient enough to modify or terminate a nonparent's visitation rights, we note that the existence of some hostility between the parent and nonparent is insufficient because obviously some animosity exists between a nonparent and a parent when one party must resort to litigation to settle visitation issues. *See Mosley*, 113 Nev. at 58, 930 P.2d at 1114 (concluding generally that the fact that parents cannot get along will not justify modifying custody); *Poppe v. Ruocco*, 869 N.Y.S.2d 767, 773 (Fam. Ct. 2008) (recognizing that it is obvious that animosity between the parties exists when a grandparent must seek legal means to obtain visitation rights).

Here, neither the parties nor the district court addressed changed circumstances before the court terminated Audrey's visitation rights. Nowhere in Roger's countermotion did he contend that any change in circumstances had occurred since the district court entered its stipulated visitation order that justified reevaluating Audrey's visitation with Martina. Similarly, the district court never made specific findings regarding changed circumstances, but instead afforded deference to the parental presumption pursuant to *Troxel* and found that continued visitation with Audrey would not be in Martina's best interest. The court failed to explain what circumstances had changed and instead summarily stated that "acrimony between the parties . . . remains and rather than diminish it appears said acrimony has increased." Such acrimony between a parent and a nonparent, by itself, is insufficient to demonstrate changed circumstances.

### The best interests of the child

The second prong of the test follows the statutory requirement that, in child custody determinations, " 'the sole consideration of the court is the best interest of the child.' " *Ellis*, 123 Nev. at 151-52, 161 P.3d at 243 (quoting NRS 125.480(1)); NRS 125A.045(1), (2). In evaluating whether a parent's request to modify or terminate a nonparent's judicially approved visitation is in the best interest of the child, courts should consider "the factors set forth in NRS 125.480(4) as well as any other relevant considerations."[6] *Ellis*, 123 Nev. at 152, 161 P.3d at 243. In applying these factors, the district court must consider that "custodial stability is . . . of significant concern when considering a child's best interest." *Id.* at 151, 161 P.3d at 243. Accordingly, we reverse the district court's

---

[6]We recognize that the factors in NRS 125.480(4) apply specifically to custody of a minor child. These factors also provide guidelines for assessing the best interest of a child in the context of nonparent visitation, and the district court should apply them accordingly.

order granting Roger's motion to terminate Audrey's visitation rights and remand this matter to the district court for further proceedings consistent with this opinion. The stipulated visitation order shall remain in full force and effect until such time as the district court modifies or terminates it in a manner consistent with this opinion. Pursuant to the stipulated visitation order, visitation was not to be altered without input from both the psychologist and the guardian ad litem. It appears from the record that the appointed guardian ad litem was not involved in this matter after her initial selection of Dr. Paglini as the psychologist who would counsel the parties.[7] On remand, the district court shall appoint a new guardian ad litem before evaluating whether Audrey's supervised nonparental visitation rights should be modified based on the stipulated order entered by the district court or terminated under the two-prong test we have enunciated in this opinion.

SAITTA and PARRAGUIRRE, JJ., concur.

---

[7]In a September 2008 letter, Dr. Paglini noted that there was no guardian ad litem with whom he could consult regarding his assessment of the parties.