132 Nev., Advance Opinion 1

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MANUELA H.,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>ROBERT TEUTON, DISTRICT JUDGE,<br>Respondents,<br>and<br>THE STATE OF NEVADA,<br>Real Party in Interest. | No. 67127<br><br>FILED<br><br>JAN 07 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus or prohibition challenging a district court order requiring petitioner to submit to drug testing in an abuse and neglect case.

*Petition granted.*

David M. Schieck, Special Public Defender, and Abira Grigsby, Deputy Special Public Defender, Clark County,
for Petitioner.

Steven B. Wolfson, District Attorney, and Felicia R. Quinlan, Deputy District Attorney, Clark County,
for Real Party in Interest.

---

BEFORE PARRAGUIRRE, C.J., DOUGLAS and CHERRY, JJ.

16-00423

## OPINION

By the Court, CHERRY, J.:

This writ petition challenges a district court order establishing a case plan in an abuse and neglect proceeding, which requires petitioner Manuela H. to submit to drug testing if an agent from the Department of Children and Family Services (DFS) reasonably believes that she is under the influence of a controlled substance. However, the district court did not make any findings to support the drug-testing requirement in the case plan. We hold that when an action step in a case plan is not related to an allegation in the abuse and neglect petition, the district court must make specific factual findings that justify the action step with which the parent must comply. Because the district court did not make factual findings to justify the action step that Manuela submit to drug testing when a DFS agent reasonably believes she is under the influence of a controlled substance, and because Manuela has no other remedy available to her, we grant her petition for a writ of mandamus.

### FACTS AND PROCEDURAL HISTORY

In 2014, Manuela and her two daughters—A.H., who was 2 years and 8 months at the time, and K.H., who was 15 months at the time—lived with Jonathan B., Manuela's boyfriend.[1] On the morning of February 4, 2014, a babysitter cared for the children. When she arrived, the sitter noticed that K.H.'s face was extensively bruised. Jonathan informed the sitter that K.H. received the injuries during a fight with her older sister and then left the children in the sitter's care. Thereafter, the sitter called Manuela at work and informed Manuela that K.H. needed

---

[1]Jonathan is not the biological father of either child.

 

medical care. Manuela explained that she was unable to leave work and that K.H. was injured when she fell off of her bed.

The sitter took K.H. to Sunrise Children's Hospital in Las Vegas, where K.H. was examined and treated. The treating physician, Dr. Sandra Cetl, noted several significant injuries. She opined that K.H.'s injuries were inconsistent with the claims the sitter related. Because Dr. Cetl suspected child abuse, the State of Nevada, through DFS, intervened. DFS placed both A.H. and K.H. in protective custody and gave physical custody of the children to their maternal grandmother.

Two days after K.H. and A.H. were taken into protective custody, the family court conducted a protective custody hearing pursuant to NRS 432B.470 and NRS 432B.480. The court was concerned that the children were physically abused and found that cause existed to remove the children from their home. The court approved the children's placement in protective custody and granted Manuela and K.H.'s father, William T.-L., supervised visitation at Child Haven.[2]

*Abuse / neglect petition*

The State's amended abuse and neglect petition[3] alleged that A.H. and K.H. needed the State's protection because K.H. required medical treatment as a result of injuries caused by negligence or a deliberate and unreasonable act. The petition alleged that Manuela failed to protect K.H. from abuse by Jonathan and that Manuela either observed

---

[2]The record before this court tells us very little about A.H.'s father, Israel P. The abuse/neglect petition solely states that Israel P. "does not provide for the care, control, supervision, or subsistence of" A.H.

[3]The record before this court does not reflect the State's reason for amending the original abuse and neglect petition.

or knew that Jonathan twice slapped K.H. and A.H. on their faces and that Jonathan admitted to slapping the children. Additionally, the petition claimed that both Manuela and William were unable to properly care for the children because each of them had a history of domestic violence. The petition further claimed that William admitted to methamphetamine use and was therefore unable to care for K.H. The petition did not contain any allegations regarding Manuela and drug use.

*Dispositional hearing and case plan*

At the district court disposition hearing, the court reviewed DFS's case plans with the parties. Manuela's case plan included a provision that she must randomly submit to drug testing. She objected, claiming that drug testing was unwarranted because the petition did not allege that she used illegal drugs and because she voluntarily took a drug test, which was clean. The State explained that it sought to test Manuela for drugs because she associated with those who used drugs and because one negative test does not establish that she does not use drugs.

Instead of requiring Manuela to submit to random drug tests, the district court imposed a reasonable belief standard and ordered that a DFS agent could require Manuela to take a drug test if the agent reasonably believed Manuela was under the influence of a controlled substance. The court clarified that a DFS agent could only require the test if the agent met with Manuela and Manuela exhibited slurred speech or another sign of drug use.

According to the modified case plan, the primary goal of the State's intervention was to reunify the family. The plan established the following objectives for Manuela: (1) to resolve physical abuse matters, (2) to resolve her domestic violence concerns, (3) to resolve her criminal

cases, (4) to collaborate with DFS, and (5) to resolve other parenting concerns. To accomplish these objectives, the plan listed several action steps that Manuela was required to complete. Among other action steps, and under the objective of collaborating with DFS, the court ordered Manuela to take a drug test when she appeared to be under the influence of a controlled substance and then complete a substance abuse evaluation if she tested positive.

Manuela subsequently filed a writ petition requesting that this court either (1) prohibit the district court from requiring that she submit to drug tests or (2) require the district court to amend the case plan and eliminate the drug-test requirement. We denied Manuela's petition because she had an adequate remedy at law: filing a motion to revoke or modify the case plan pursuant to NRS 432B.570(1).

Accordingly, Manuela filed a motion to amend her case plan. At the hearing on her motion, Manuela stressed that mere association with drug users was not enough to require her to take a drug test. She argued that the action steps in a case plan must rationally relate to the allegations in the petition and that the petition did not allege that she had substance abuse issues. Manuela further argued that drug testing based on reasonable belief is an unreasonable search and that the State's standard of proof should be, at least, probable cause.

The district court denied Manuela's motion. The court found that the drug tests could intrude upon Manuela's constitutional rights but concluded that it had minimized the intrusion based on the court's jurisdiction over the children, the facts of the case, and the need to prevent DFS from having to remove her children in the future. Manuela's instant petition followed.

## DISCUSSION

*Writ relief*

A writ of mandamus is available "to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see also* NRS 34.160. A writ of prohibition may be warranted when a district court acts without or in excess of its jurisdiction. NRS 34.320; *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev., Adv. Op. 21, 276 P.3d 246, 249 (2012); *see also Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

Additionally, writ relief is generally only available when there is no plain, speedy, and adequate remedy in the ordinary course of law. NRS 34.170; NRS 34.330; *see also Oxbow Constr., LLC v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 86, 335 P.3d 1234, 1238 (2014). A petitioner bears the burden of demonstrating that the extraordinary remedy of mandamus or prohibition is warranted. *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). Determining whether to consider a petition for extraordinary relief is solely within this court's discretion. *Smith*, 107 Nev. at 677, 818 P.2d at 851.

This court will decline to consider writ petitions challenging interlocutory district court orders in most cases. *Oxbow Constr.*, 130 Nev., Adv. Op. 86, 335 P.3d at 1238. But we may use our discretion to consider writ petitions when an important issue of law needs clarification and considerations of sound judicial economy are served by considering the writ petition. *Renown Reg'l Med. Ctr. v. Second Judicial Dist. Court*, 130 Nev., Adv. Op. 80, 335 P.3d 199, 202 (2014).

Neither NRAP 3A(b) nor other statutory provisions allow a party to appeal a district court's denial of a motion to amend a case plan; thus, Manuela does not have an adequate legal remedy at law, and writ relief is her only option. Moreover, the petition presents an important issue of law that requires our clarification. Therefore, we will consider this writ petition.

*Factual findings*

In her petition, Manuela argues that the action steps in the case plan must rationally relate to the charges in the State's abuse and neglect petition. She asserts that with no failed drug tests or evidence indicating that she has ever used or abused controlled substances, the district court exceeded its authority when it required her to submit to drug tests whenever a DFS agent reasonably believes she is under the influence of a controlled substance. Manuela also argues that NRS 432B.540 does not give the district court broad discretion to create requirements that are absent from the State's petition.

The State disagrees, arguing that NRS 432B.540 requires the district court to create an appropriate plan to provide for the permanent placement of the children. The State also contends that NRS 432B.560(1) authorizes the court to order the parent to complete any treatment that it deems to be in the best interest of the child.

We review questions of statutory interpretation and other legal issues de novo. *Rennels v. Rennels*, 127 Nev. 564, 569, 257 P.3d 396, 399 (2011). Our goal in interpreting statutes is to effectuate the Legislature's intent. *Edgington v. Edgington*, 119 Nev. 577, 582-83, 80 P.3d 1282, 1286-87 (2003). To do so, we must "give [a statute's] terms their plain meaning, considering its provisions as a whole so as to read

them in a way that would not render words or phrases superfluous or make a provision nugatory." *S. Nev. Homebuilders Ass'n v. Clark Cty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (internal quotation omitted). But "[w]hen a statute . . . does not address the issue at hand," we "look to reason and public policy to determine what the Legislature intended." *Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 147, 179 P.3d 542, 548 (2008).

When the State determines that a child needs protection from abuse or neglect, the State files a petition in the district court outlining "[t]he facts which bring the child within the jurisdiction of the court." NRS 432B.510(4)(a); *see also* NRS 432B.410(1). If the court finds that the allegations in the petition are true, then the child welfare services agency must make a report, and if the agency thinks a child needs to be removed from a parent's custody, the agency must also make a case plan. NRS 432B.540. A case plan is either a written agreement between the parent(s) and the custodial agency or an order of the court. NRS 128.0155. The action steps in the case plan are conditions "which have a primary objective of reuniting the family or, if the parents neglect or refuse to comply with the terms and conditions of the case plan, freeing the child for adoption." *Id.* In order to provide for the child's "best interests and special needs," the Legislature requires that the case plan include:

> (b) A description of the services to be provided to the child and to a parent to facilitate the return of the child to the custody of the parent or to ensure the permanent placement of the child;
>
> (c) The appropriateness of the services to be provided under the plan; and
>
> (d) A description of how the order of the court will be carried out.

NRS 432B.540(2). The Nevada Legislature has authorized district courts to order a parent under their respective jurisdictions through abuse and neglect proceedings "to undergo such medical, psychiatric, psychological, or other care or treatment as the court considers to be in the best interests of the child." NRS 432B.560(1)(a). Likewise, the court may preclude a parent from engaging in "[a]ny harmful or offensive conduct toward the child, the other parent, the custodian of the child or the person given physical custody of the child." NRS 432B.560(1)(b)(1). In preserving and reunifying families following abuse or neglect allegations, the Nevada Legislature very clearly requires that "the health and safety of the child *must* be the paramount concern." NRS 432B.393(2) (emphasis added).

We have previously held, albeit in the context of determining child custody, that a court cannot determine the best interest of a child in custody proceedings without making factual findings. *See Davis v. Ewalefo*, 131 Nev., Adv. Op. 45, 352 P.3d 1139, 1143 (2015). Accordingly, we hold that a district court, pursuant to NRS 432B.560(1), has the authority to order a parent to undergo treatment or testing that deviates from the petition if it deems such treatment or testing necessary to protect the child's best interest, so long as the district court issues factual findings to support the action step. When the action steps deviate from the petition, we admonish the district court to issue "specific, relevant findings" and "an adequate explanation of the reasons for" the court's order. *See Davis*, 131 Nev., Adv. Op. 45, 352 P.3d at 1143. Without findings that provide a "factual basis" for the district court's order, "this court cannot say with assurance" whether the action steps were ordered "for appropriate legal reasons." *See id.* at 1143-44.

Here, the record does not contain any factual findings that support the court's order that Manuela submit to drug testing when a DFS agent reasonably believes she is under the influence of a controlled substance. The State's petition did not allege that Manuela used or abused controlled substances at any time. At the hearing, the State represented that it sought to drug test Manuela because it believed she continuously associated with drug users and because a single, clean drug test did not indicate that Manuela did not use drugs infrequently. The State's unsubstantiated representation at the hearing, standing alone, is insufficient to justify the drug-testing requirement. *See A Minor v. State,* 85 Nev. 323, 325, 454 P.2d 895, 896 (1969) ("It has long been a recognized rule of law that any statement or argument made by counsel before the trier of facts, concerning the fact of a case, cannot be regarded as evidence."). Accordingly, the district court's authority to prescribe an additional requirement rests in its express findings that the additional requirement is in the best interest of the child due to the specific facts of the case. Because there are no explicit factual findings that show why this action step in Manuela's case plan is justified, we grant Manuela's petition.

Therefore, we grant the petition[4] and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate the

---

[4]We decline to reach Manuela's constitutional claims because we are granting her petition on other grounds. *See Miller v. Burk,* 124 Nev. 579, 588-89 & n.26, 188 P.3d 1112, 1118-19 & n.26 (2008) (explaining that we need not address issues, even constitutional issues, if they are unnecessary to resolve the case at hand).

portion of its order establishing the drug-testing requirement in the case plan and to proceed consistent with this opinion.

_____Cherry_____, J.
Cherry

We concur:

_____Parraguirre_____ C.J.
Parraguirre

_____Douglas_____, J.
Douglas